# IN RE SWINBURNE.

PATENTS; FOREIGN PATENTS; BRITISH PROVISIONAL SPECIFICATION.

The time of filing an application for a patent in the British Patent Office, although the application be accompanied only by a provisional specification, must nevertheless be taken as the date of the application for a foreign patent, within the meaning of Sec. 4887, R. S. U. S., providing that a patent shall not be granted in this country on an application here where the applicant has filed an application for a patent for the same invention in a foreign country more than seven months prior to the filing of his application here.

No. 178.   Patent Appeals.   Submitted March 11, 1902.   Decided April 1, 1902.

HEARING on an appeal by an applicant for a patent from a decision of the Commissioner of Patents denying his application.        *Affirmed.*

The facts are sufficiently stated in the opinion.

Mr. *Herman C. Wolterick* and Mr. *F. C. Somes* for the appellant.

Mr. *John M. Coit* for the Commissioner of Patents.

Mr. Justice SHEPARD delivered the opinion of the Court:

The appellant James Swinburne, appeals from a decision of the Commissioner of Patents denying his application for a patent for an improvement in the process of treating sulphide ores.

The appellant holds a British patent for the same invention issued as of May 1, 1897. His application was filed in the United States Patent Office April 23, 1898.

The sole ground of refusal is that the present application was filed more than seven months after the filing of the application for the British patent.

Section 4887, Revised Statutes which regulates the subject reads as follows:

"No person otherwise entitled thereto shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented by the inventor or his legal representatives or assigns in a foreign country, unless the application for said foreign patent was filed more than seven months prior to the filing of the application in this country, in which case no patent shall be granted in this country."

Section 5, Part II, of the British Patent Act contains five clauses regulating applications for patents.

Clause (2) provides:

"An application must contain a declaration to the effect that the applicant is in possession of an invention whereof he * * * claims to be the true and first inventor, and for which he desires to obtain a patent; and must be accompanied by either a provisional or complete specification."

Clause (3):

"A provisional specification must describe the nature of the invention, and be accompanied by drawings, if required."

Clause (4):

"A complete specification, whether left on application or subsequently, must particularly describe and ascertain the nature of the invention, and in what manner it is to be performed, and must be accompanied by drawings, if required."

Clause (5):

" A specification, whether provisional or complete, must commence with the title, and in the case of a complete specification must end with a distinct statement of the invention claimed."

Every application so made is referred to an examiner who shall report whether the invention has been fairly described, etc., and whether " the title sufficiently indicates the subject-matter of the invention." (Idem, Sec. 6.)

If the examiner reports that the nature of the invention is not fairly described, or the application, specification and drawings are not in proper form, or that the title does not sufficiently indicate the subject-matter of the invention, the Comptroller shall require amendments. (Idem, Sec. 7.)

If a complete specification is not left with the application, the applicant has nine months within which to file the same; and if not so filed the application shall be decreed to be abandoned. (Idem, Sec. 8.)

When the complete specification is left within the time, the Comptroller shall refer both the provisional and the complete specification to an examiner to ascertain whether the latter has been prepared in the prescribed manner " and whether the invention particularly described in the complete specification is substantially the same as that which is described in the provisional specification." (Idem, Sec. 9.)

When the application has been approved " a patent shall be sealed as soon as may be and not after the expiration of fifteen months from the date of application, except," etc. * * * (Idem, Sec. 12.)

Clause (3):

" Every patent shall be dated and sealed as of the day of the application: Provided that no proceedings shall be taken in respect of an infringement committed before the publication of the complete specification." * * * (Idem, Sec. 13.)

It appears from the record, that on May 1, 1897, the applicant filed his application in the British Patent Office in

the required form accompanied by a provisional specification describing the nature of his invention as required.

On February 28, 1898, he lodged in the Patent Office a complete specification in conformity with the requirements therefor. June 1, 1898, the complete specification was accepted and on August 16, 1898, a patent was sealed and delivered, dated, however, as of May 1, 1897, when the original application and provisional specification had been filed.

The decisions of the Patent Office tribunals in this case adopt, without further discussion, the conclusion of Mr. Commissioner Duell, in another case decided December 20, 1898, and from which there was no appeal, to the effect that the time of filing the application in the British Patent Office, accompanied only by the provisional specification, must be taken as the date of the application for the foreign patent within the meaning of section 4887, Revised Statutes above quoted. *Ex parte Smith*, S. C. C. D., 1898, 276; 85 O. G. 2091.

That decision, in which the question was fully discussed, meets with our approval after a careful consideration of its grounds in the light of the able argument that has been presented on behalf of the appellant, and leaves little, if anything, to be said in support of its conclusion.

We think that no other meaning can reasonably be deduced from the language of the British statute than that the application therein provided for, which may be accompanied by only a provisional specification, at the option of the applicant, is the application for the patent which may thereafter be issued upon a complete specification. As was said by Mr. Commissioner Duell in the decision before cited:

" The complete specification is merely an amplification of the provisional specification. The provisional specification differs from the complete specification in that the former must describe the nature of the invention and the latter must particularly describe and ascertain the nature of the invention and in what manner it is to be performed."

We find nothing in opposition to this view in the recent decision in the Chancery Division of the High Court of

Justice in England, to which our attention has been invited. *Pneumatic Tyre Co. Company, Ld., v. East London Rubber Company,* Vol. XIV, No. 5; *Reports of Patent, Design and Trade Mark Cases,* p. 77.

On the contrary it seems to be directly upheld by the following expression in the opinion in that case:

"Undoubtedly, in a provisional specification you must find the nature of the invention, though it need not be described otherwise than roughly so long as it is fairly described. But the provisional specification need not describe the manner in which the invention is to be carried into effect."

The first step of the inventor in the proceeding to secure a patent is called, and referred to as the application, throughout the British statute regulating proceedings in the Patent Office. This application is nowhere confounded with the provisional specification that must accompany it, or the complete specification that may be filed within nine months thereafter. It is this application that is granted when the patent issues, and which by express provision controls its date. The contention that the original paper called the application is practically a mere introduction of the provisional specification of the British patent law, and that the latter so closely resembles the *caveat* in the United States law (R. S., Sec. 4902) that it must, therefore, be regarded merely as its equivalent, in the construction of our statute, is ingenious and plausible, but we cannot accord its soundness.

It may be conceded that the provisional specification which may be first filed with the application in the British Patent Office has some of the features of the *caveat* in our system; but these do not operate to convert the complete specification thereafter to be filed into the application for the patent, within the meaning of section 4887, Revised Statutes, any more than of the British statutes heretofore recited.

Independent of the form or function of either specification that may be filed in connection with, or in support of

it, the instrument entitled, and referred to as, the application throughout the British patent law, remains the initiatory step in the proceeding to obtain a patent under that law, and must, therefore, fix the date from which the limitation of section 4887, Revised Statutes begins to run.

The decision appealed from is right and must be affirmed. It is so ordered, and, in addition, that this decision be certified to the Commissioner of Patents as required by law.

*Affirmed.*