## ARMSTRONG v. LEVY.

Court of Appeals of District of Columbia.

Submitted Nov. 14, 1928. Decided Dec. 3, 1928.

Petition for Rehearing Denied Dec. 22, 1928.

No. 2085.

Henry F. Wiegand, of New York City, for appellant.

William R. Ballard, of New York City, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in an interference proceeding in which priority was awarded the senior party.

The invention relates to a radio receiver, in which descent from the high or received frequency to the voice or signal frequency is made in two steps instead of one, as in the conventional receiver, and in which amplification is used at the intermediate frequency stage.

Levy filed in France on August 4, 1917. An application was filed here on August 12, 1918, substantially like the French application. Armstrong filed February 8, 1919, and a patent was issued to him on June 8, 1920.

If the two applications disclose common subject-matter, the Armstrong patent was inadvertently issued, for under our rulings Levy's United States application has the "same force and effect as the same application would have if filed in this country on the date" of the French application. See Seror v. Dick, 55 App. D. C. 151, 3 F.(2d) 92; Kling v. Haring, 56 App. D. C. 153, 11 F. (2d) 202; Giesler v. Moulet, 56 App. D. C. 196, 11 F.(2d) 911; Lamb v. Guillemard, 56 App. D. C. 234, 12 F.(2d) 175.

Levy copied the claims of the Armstrong application. Claim 32, here reproduced, is illustrative of the group: "The method of receiving and amplifying high frequency oscillations whereby the incoming energy is utilized to produce oscillations of a different locally predetermined high frequency which are then amplified and the resultant energy utilized to produce oscillations of a second different, locally predetermined, high frequency, which are then amplified, detected and indicated." The Primary Examiner rejected them on two grounds: The first, and perhaps the main, ground was that the term "high frequency" as used in the claims should, in the light of the Armstrong disclosure, be restricted to very high frequencies; and the second was that while Levy, in describing the system of his Fig. 7, stated that it could be modified by adding amplifiers at the points

Fig. 7

indicated in dotted lines and also by adding the local source of high frequency indicated by dotted lines at 65, there was lacking any clear statement that both of these modifications were to be used in or applied to the system of Fig. 7 at one and the same time, and that therefore he could not make the claims.

On appeal, the Board in its first decision sustained Levy's right to make the claims, but on reconsideration affirmed the decision of the Primary Examiner. Upon affirmance of the Board's decision by the Commissioner, an appeal ex parte was prosecuted to this court [55 App. D. C. 137, 2 F.(2d) 939], where it was held that the Patent Office erred in reading limitations into the broad claims of the Armstrong application. The correctness of this ruling is conceded by both parties to this interference. As to the other ground upon which the claims were rejected, we directed attention to the first decision of the Board of Examiners in Chief, wherein they stated that "it further appears from a comparison of Levy's disclosure with that of Armstrong that their constructions, so far as the claims here under consideration are concerned. are substantially the same, and are inherently capable of the same uses," and reversed the decision appealed from.

Levy in due course was permitted to make the claims, and an interference between his application and the Armstrong patent was declared. Upon opening the preliminary statements, it was found that the earliest date of conception alleged by Armstrong was March, 1918, which, it will be observed, was later than Levy's earliest filing date. Thereupon, Armstrong filed a motion to dissolve, and a hearing was had before the Law Examiner, who, after an analysis of the Levy application, sustained Levy's right to make the claims. Levy then filed a motion for judgment on the record, which was contested by Armstrong in a hearing before the Examiner of Interferences, who required Armstrong within 30 days to show cause why judgment on the record should not be entered. ▮ Thereupon, Armstrong moved for leave to take testimony. This motion was denied by the Examiner of Interferences. An appeal was taken to the Commissioner, who affirmed the decision, saying: "The party Armstrong has appealed from the decision of the examiner of interferences denying the motion filed by such party for leave to take testimony 'bearing upon the right of the party Levy to make the claims constituting the counts of this interference.' The motion is accompanied by an affidavit of John V. L. Hogan which sets forth certain matters that, if the motion were granted, Armstrong would

presumably seek to establish by the testimony of Hogan and possibly other experts. The party Armstrong recognizes that it is not the general practice of this Office to permit the taking of testimony in order to determine the right of a party to make the claims but urges that the instant case is exceptional and justifies the departure from the usual rule. There is no allegation that the language or terms employed in the specification of the party Levy or the counts of the interference are ambiguous or employed in any unusual sense. The disclosure of the party Levy seems clear and readily understood. The only question involved is whether or not the disclosure supports the claims of the issue. This is a question of fact. * * * Under these conditions, it is believed the disclosure of the party Levy can be properly determined by the experts of this office aided by the arguments and explanations of counsel."

The decision of the Commissioner on this interlocutory motion is assigned as error here, but is without merit. Cooper v. Downing, 45 App. D. C. 345.

Thereupon, judgment on the record against Armstrong was entered by the Examiner of Interferences, which decision was affirmed by the Board of Appeals.

▮ It thus appears that the sole question left for decision is whether the Levy application discloses simultaneous use of the amplifiers and local source. Our decision in the ex parte proceeding was necessarily based upon the theory that the Levy application did disclose these features, but that decision, of course, is not res judicata here, since Armstrong was not and could not have been a party. Substantially the same arguments that were presented in that proceeding on the question whether Levy discloses simultaneous use of the amplifiers and local source have been presented here. We still are convinced that the first decision of the Examiners in Chief in the ex parte proceeding was correct. In that decision, the Board said: "The examiner is of the view that appellant's disclosure illustrated in Fig. 7 does not warrant the assumption that he contemplates the use of the local sources 65, 64, concurrently with each other and with amplifiers but rather that these parts may have been intended to be used separately with different modifications. However, as we read the specification it would appear that the essential modification disclosed in connection with Fig. 7 relates to the production of beats by the use of local sources of oscillation 65, 64 at the receiving station in lieu of their production at the sending station and that otherwise the system is the same for the two methods. This, more-

over, would appear to be the obvious intention when the specification is considered from the point of view of prior practice in the art."

In the decision of the Law Examiner in the present interference proceeding, he said: "Inasmuch as the super audible beat reception and the amplification of beat oscillations are both disclosed in the Levy application, as well as the use of amplification where desired, it requires no inventive extension of the original Levy disclosure to provide a basis for the simultaneous use of heterodyne reception and amplification of the resulting super audible beat oscillations. The discussion of the matter may be summarized by reference to Fig. 7 of Levy's drawings with the understanding that amplifiers may be added to this figure. Of this there can be no doubt. Exhibit B of Armstrong, attached to his brief filed December 23, 1925, shows Fig. 7 of Levy with the local source 65 omitted and the amplifiers added. There is no statement by Levy that both sources 64 and 65 cannot be used in the same system as shown in Fig. 7, or that when source 64 is used, source 65 must be omitted. * * * Fig. 7 of Levy shows both local sources 64 and 65, and if amplifiers may be added, as in Armstrong's exhibit B, the suggestion of Levy's Fig. 7, modified by adding amplifiers, is sufficient to teach those skilled in the art that the third high frequency may be amplified, this being a step of which the apparatus originally disclosed is inherently capable. If this much is conceded the rest would appear to follow."

Levy's disclosure is more comprehensive than that of Armstrong, but we think that his Fig. 7 and explanatory references in the specification disclose a receiving apparatus adapted either to supply the beating frequency locally or the use of that received from the transmitter when it is supplied at the sending end.

We rule, therefore, that Levy is entitled to make these claims, and affirm the decision awarding him priority.

Affirmed.