38 C.C.P.A.(Patents)
**Application of SMYTH.**

**Patent Appeal No. 5808.**

United States Court of Customs and Patent Appeals.

June 5, 1951.

Rayson P. Morris, New York City (John J. Rogan, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, hereinafter referred to as the examiner, rejecting the claims, numbered 4 to 12, inclusive, of appellant's application for patent relating to alleged "new and useful improvements in Control of Television Receivers." No claims were allowed.

Claims 10 and 11 are method claims; the others relate to an apparatus by means of which the method is practiced.

The board selected claim 4 as illustrative of all the claims. In the brief for appellant claim 10 is cited as typical of the method claims. We here reproduce the two:

"4. A television receiver comprising means for receiving television signals, an image reproducer for reproducing images corresponding to said signals, means for controlling an operating characteristic of said receiver to modify the signals produced thereby, a light sensitive device positioned and constructed to detect illumination impinging on the receiver from a source exterior thereto and arranged to generate control signals substantially independent of said television signals but corresponding to the level of said exterior illumination, and control means responsive to said control signals for modifying said operating characteristic of said image reproducer in accordance with changes in the intensity of said exterior illumination to modify said television signals in accordance therewith.

"10. The method of reproducing television images in accordance with received signals in a location of varying general illumination which comprises generating electrical control signals responsive to the varying general illumination, producing television images under the control of received television signals, and combining the actions of said generated control signals and said received television signals to produce television images of substantially uniform apparent contrast independently of

the intensity of the varying general illumination."

The examiner's rejection which the board affirmed was based upon the ground that the claims are unpatentable to appellant in view of a patent, No. 2,264,172, issued to John C. Batchelor November 25, 1941, upon an application, serial No. 291,866, filed in the United States Patent Office August 25, 1939.

As a matter of fact, all the claims on appeal were copied verbatim from the Batchelor patent.

The situation presented is somewhat novel.

Appellant, who is a British subject, obtained from the British Government, as the inventor, a patent entitled "Improvements in or relating to the Control of Television Receivers." The patent bears date of October 27, 1939. The provisional specification [1] of the patent, which appears to be required under British patent statutes, bears date of February 7, 1939. As we understand it, the latter was the filing date of the application and the former, that is, October 27, 1939, was the date of the issuance of the patent.

Appellant avowedly is seeking to have an interference declared ultimately so that he may contest priority with Batchelor.

His United States application here involved was filed in the Patent Office August 19, 1947, and given the serial number 769,549. Its text is an exact replica of the complete specification of his British patent. As filed, it embraced three claims which were verbatim copies of the claims in his British patent.

From the foregoing it may be seen that the filing date of appellant's *provisional specification* in Great Britain (February 7, 1939) was more than six months *prior* to the filing date (August 25, 1939) of the United States application of Batchelor, but the date of issuance of appellant's patent (October 27, 1939), which contained the latter's *complete specification,* was substantially two months *after* the Batchelor filing date.

On October 14, 1947, appellant, proceeding under Public Law 690 of the 79th Congress, see 35 U.S.C.A. § 109; also Patent Office Rule 55 in edition of March 1, 1949, with footnote, 35 U.S.C.A.Appendix, requested "the priority date of February 7, 1939," for his application, stating, in effect, that on that date he had filed the application, that is, his provisional specification, in Great Britain.

Certain evidence was submitted and the United States examiner in a decision dated June 7, 1948, held appellant "entitled to a priority date corresponding to the filing date of the application [the provisional specification] filed in Great Britain on Feb. 7, 1939, as to claims 1, 2 and 3," but in the same decision he rejected those claims as being "vague, indefinite and incomplete," Nos. 1 and 2 being further rejected on certain prior art not involved here.

In the course of his decision he said:

"Although the British provisional specification is sufficient to support the functional statements of claims 1–3, it is to be noted that such disclosure would not support claims properly drawn to the subject matter disclosed by the present application.

"In amending his claims applicant should endeavor to patentably distinguish them over the Batchelor patent which discloses and claims subject matter quite similar to that disclosed by applicant.

"Since the above noted provisional specification does not disclose such subject matter and since the complete specification of applicant's British patent was not filed before the filing date of the Batchelor patent, this patent will constitute a valid reference.

"Furthermore applicant's British patent, cited above, is a statutory bar to the allowance of any claims not supported by the provisional specification referred to above."

Appellant thereupon cancelled the three original claims, and on December 6, 1948,

1. It appears to be required by British law that an applicant for a patent file two specifications, one designated "provisional" and the other "complete" and the filing date of the provisional specification constitutes the filing date of the application.

amended his application by substituting the nine claims here on appeal, stating that it was done 'for purposes of Interference with U.S. Pat. No. 2,264,172" (the Batchelor patent).

■ It is not questioned that appellant in this proceeding is entitled to rely upon the filing date of his provisional specification in Great Britain for constructive reduction to practice of all subject matter *which it discloses.* Cf. Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 613, 59 S.Ct. 675, 83 L.Ed. 1071.

The brief of the Solicitor for the Patent Office states that "It is conceded that it [the provisional specification] is a reduction to practice for what is disclosed therein," but that "It is obviously not a reduction to practice for subject matter *not* disclosed therein." (Italics supplied by us.)

It apparently is conceded that the *complete* specification of appellant's British patent supports the appealed claims but the complete specification not having been issued until some two months after the filing date of the Batchelor application, it, in effect, properly was held that appellant could not rely on its date to establish a priority date even *prima facie.*

It is important in considering the case to keep in mind the distinction with reference to disclosure between appellant's provisional specification and his complete specification.

By reference to the decision of the Court of Appeals of the District of Columbia (now the United States Court of Appeals of the District of Columbia Circuit), our immediate predecessor in jurisdiction of appeals taken directly from the Patent Office, in the case of In re Bastian, 44 App. D.C. 425, it may be seen that that court approved a holding of the Commissioner of Patents to the effect that the grant of a United States patent was barred where a provisional specification had been filed in Great Britain more than a year prior to the filing of the United States application, *notwithstanding the fact that the provisional specification did not disclose the subject matter of the claims of the United States application.*

If the principle of that decision were followed here it would seem that much of appellant's difficulty in the case might be obliterated, but this court in a decision in the interference case of Normann v. Schmidt, 125 F.2d 162, 29 C.C.P.A., Patents, 822, 830, expressed its disagreement with that decision and declined to follow it, citing decisions to the contrary in the following cases: American Stainless Steel Co. v. Rustless Iron Corporation of America, D.C., 2 F.Supp. 742; Handley Page, Limited v. Leech Aircraft, Inc., D.C., 35 F.Supp. 856; and Woburn Degreasing Co. of New Jersey v. Spencer Kellogg & Sons, Inc., D.C., 40 F.Supp. 357.

In its decision in the instant case, rendered in response to appellant's petition for reconsideration of its original decision affirming that of the examiner, the Board of Appeals recited that the British Patents and Designs Act, 1907, Part I, Section 2, quoted the following from the British statutes [2]: "(1) A *provisional* specification must describe the nature of the invention. (2) A *complete* specification must particularly describe and ascertain the nature of the invention and the *manner in which the same is to be performed.*" (Italics supplied by us.)

Following this quotation the board commented: "A provisional specification only fulfills a part of what the complete specification will eventually describe. In other words the provisional specification merely describes the nature of the invention and does not set forth the manner in which the same is to be performed, which is the function of the complete specification and is also the function of the specification filed in the United States and which is accept-

---

2. A more elaborate statement respecting British patent statutes may be found in a decision of the Court of Appeals of the District of Columbia rendered April 1, 1902, in the case of In re Swinburne, 19 App.D.C. 565. Incidentally, it may be said that the Swinburne case was cited in the decision of the Bastian case, hereinbefore referred to, but in our opinion the Swinburne decision does not support the Bastian decision in the particular upon which it was cited.

able as a constructive reduction to practice."

■ In view of the fact that appellant, practically from the beginning of his activity in the United States Patent Office, has avowed it to be his purpose ultimately to secure a declaration of interference in order that he may contest priority with Batchelor, and in view of the further fact that the word "priority" appears so frequently in the record, in the arguments, and in this opinion, it is proper that we should emphasize the well-settled legal principle that this court is without jurisdiction to declare, or to direct the declaration of, interferences.

That was settled definitely by the Court of Appeals of the District of Columbia, our predecessor in patent jurisdiction, in a unanimous decision rendered January 2, 1894, in the case of Westinghouse v. Duncan, 2 App.D.C. 131.

■ However, so far as the instant case is concerned, it does become our duty to pass upon the *patentability* of the appealed claims and certify our findings in that regard to the Commissioner of Patents, and in determining that question its must be decided whether the British *provisional specification* sufficiently supports the claims.

The specification of appellant's United States application follows verbatim his British *complete* specification, in which latter his British *provisional* specification is embodied. As has been stated, it apparently is conceded that the British *complete* specification discloses matter which would support the appealed claims taken from the Batchelor patent although the phraseology and drawings, so far as the appearance of the latter is concerned, of Batchelor differ from the phraseology and drawings of appellant, but it is denied vigorously by the tribunals of the Patent Office that appellant's provisional specification constitutes a sufficient disclosure.

It seems apparent therefore that the ultimate issue for our determination is whether the claims on appeal find the requisite support in appellant's provisional specification standing alone, that is, without any reference to other matter embraced in his patent.

Perhaps the situation may be comprehended more readily when it is stated that, in our opinion, the case requires precisely the same consideration it would receive if the British provisional specification constituted the entire specification of appellant's United States application.

■ In other words, if there were here an application for patent the specification of which contained only the provisional specification of appellant's British patent, without drawings or other indicia, could such specification properly be held to meet the requirements of R.S. § 4888, 35 U.S. C.A. § 33, for a written description defining the manner and process of making and using the device for which patent is sought in such full, clear, and exact terms as to enable any person skilled in the television art to make, construct, and use the same? That is what the statute demands; it is not satisfied with less; and the matter must be tested by that requirement.

For the nonce we have accepted claims 4 and 10 quoted, *supra,* (the board quoted only claim 4) as typical respectively of the apparatus and method claims, and in order that they may be studied in the light of appellant's provisional specification, filed in conformity with British law, we here quote the text of that specification in full:

"We, Kolster-Brandes Limited, a British Company, and Charles Norman Smyth, a British Subject, both of Cray Works, Sidcup, Kent, England, do hereby declare the nature of this invention to be as follows:—

"*This invention relates to the control of television receivers and comprises the automatic control of brightness and/or contrast of the reproduced picture in* accordance with the lighting conditions in the neighbourhood of the receiver.

"A photoelectric or other light sensitive device may be incorporated in a television receiver cabinet or is likewise *associated with the receiver to respond* to the degree of general illumination present in the room in the neighbourhood of the television receiver. It is then so coupled in circuit

that the brightness and/or contrast are dependent on the extraneous light falling on the receiver.

"For example if a receiver is being viewed in a darkened room and the light is switched on, the picture will require additional contrast and brightness and manual readjustment has normally to be resorted to. With the application of the invention, such readjustment becomes automatic.

"*One method of carrying the invention into effect would be to slightly increase the H.F. or video gain of the receiver by reducing the bias on one of the amplifier valves when the receiver becomes illuminated.*

"The changing bias can readily be obtained from a photo cell whose resistance is a function of the light falling on it, and which forms an integral part of a bias producing potentiometer in known manner." (Italics supplied by us.)

In a paper designated "Letter of Examiner, January 3, 1949," the examiner rejected the claims, rendering a decision, the pertinent text of which we here quote:

"This application is not considered entitled to a priority date corresponding to the filing date of the application, filed in Great Britain on February 7, 1939, as to claims 4 through 12 for the reasons explained below.

"Claim 4, corresponding to claim 1 of patent No. 2,264,172, is not supported by the disclosure of British provisional specification of British patent No. 524,672 for the following reasons.

"(1) A foreign specification whose text is to serve as the basis for claims in an American patent must conform to the requirements of Revised Statute, Sec. 4888, as rigidly as an American specification. The provisional specification does not conform to the requirements of Revised Statute, Sec. 4888, Rule 35, Rules of Practice, that it set forth the precise invention for which a patent is solicited, explain the principle thereof, and the best mode in which the application of the principle is contemplated.

"The invention, as explained in Rule 24, may be any new and useful art, *machine,* manufacture, or composition of matter, or any new and useful improvement thereof. As all that may be obtained from the provisional specification is the suggestion that a photoelectric cell placed in the vicinity of a television reproducing device may be used to vary the brightness of the latter in accordance with the ambient brightness, without the structure and circuit necessary to accomplish the result the precise invention is not set forth. Concomitantly, the principle thereof is not explained. [Italics quoted.]

"Too, no mode whatsoever of applying the principle is set forth.

"(2) The British provisional specification *does not include a drawing* as required by Revised Statute Sec. 4889, Rule 49. [Italics supplied by us.]

"(3) Every feature of the claim is not illustrated as required by Rule 50.

"Among the features of the claim not supported by the specification are:

"(a) Means for receiving television signals. Lines 16 [3] and 34 [3] do not disclose the means for receiving television signals.

"(b) Means for controlling an operating characteristic of said receiver to modify the signals produced thereby. Lines 7–10 [3] narrate an object of the invention, and 32–37 [3] a suggested method of carrying the invention into effect. *They do not disclose means.* [Italics supplied by us.]

(c) a light sensitive device positioned and constructed, etc. The disclosure neither positions nor constructs the device, nor arranges it to generate control signals corresponding to the level of exterior illumination.

"(d) and control means responsive to said control signals, etc. *No such means are disclosed.* [Italics supplied by us.]

"Claims 5 through 12 similarly fail to read on the disclosure of the British provisional specification.

3. The lines referred to are italicized in the provisional specification as quoted, *supra.*

"Applicant having failed to establish prima facie evidence of priority, claims 4 through 12 are rejected as fully met by Batchelor.

"Claims 6, 7 and 8 are further rejected as based on an insufficient disclosure. *The adjusting means of these claims are not found in the specification.*" [Italics supplied by us.]

Following the examiner's letter of January 3, 1949, appellant on January 29, 1949, submitted a further claim numbered 13 [4], which seemingly was not taken from the Batchelor patent, and accompanied its submission by remarks traversing the examiner's action.

On February 11, 1949, the examiner again rejected claims 4 to 12, inclusive, in a decision from which we quote the following:

" * * * As indicated in the previous action invention does not reside in the suggestion that something may be done in one manner or another, but in the structure which, positively produces the desired result. That applicant's British provisional specification offers nothing more than a suggestion is evident from the next-last paragraph, which begins: 'One method of carrying the invention into effect would be * * *'. This cannot be construed as a disclosure of structure adequate to vary the receiver brightness as intended.

"The mere mention in the provisional specification of conventional receiver elements is meaningless, for the same elements may be combined in an infinite number of ways to produce results unakin to that which applicant seeks. It may be pointed out, for example, that the elements mentioned are combined in the system of the French patent cited to form a device which simultaneously sends and receives.

"Further, although the provisional specification states that the changing bias may readily be obtained from a photocell, in the embodiment of the invention disclosed by the complete specification the bias is taken from a tube fed by the photocell, rather than from the photocell, itself. The additional tube, V2, and its associated components are not mentioned in the provisional specification.

"It would appear that applicant, himself, did not believe the provisional specification to disclose a utilizable embodiment of his idea, since the complete specification followed the provisional after the lapse of sufficient time to set forth the system forming the basis of the complete specification.

"Applicant's attention is invited to the case of Brand v. Thomas, 1938 C.D. 467; 496 O.G. 561, from which the following is extracted: ' * * * Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art might construct the device in a particular manner.'

"See also Thompson v. Dicke (No. 4269) 1940 C.D. 269; 517 O.G. 564."

The examiner declared this action to be final and on March 5, 1949, the appeal to the Board of Appeals was taken. The examiner's official statement summarizing his reasons for the rejection was filed March 25, 1949.

Thereafter, specifically on April 7, 1949, appellant filed affidavits of two parties in what was stated to be "further support" of the argument that the British provisional specification constitutes "a sufficiently clear and precise disclosure of the invention to support the claims * * * and to permit one skilled in the art to which it appertains to make and use the invention."

One of the affidavits was made by Mr. Rayson P. Morris, one of appellant's attorneys. It reads:

"That on Mar. 5, 1949, he handed to Marshall Rogan, of Manhasset, New York, a copy of the Provisional specification of British patent 524,672, together with instructions to Marshall Rogan, copies of which are attached to and made a part

---

4. Claim 13 was rejected subsequently on Batchelor by the examiner. No appeal as to its rejection was taken to the Board of Appeals. So, of course, it was not included in the appeal to us.

of the affidavit under Rule 76 signed by the aforesaid Marshall Rogan.

"That the said Marshall Rogan was given some papers and left alone without further instructions, and that he prepared sketches of the circuit described in said Provisional specification and a brief description of photocell operation circuit without reference to any text books and without consulting with any other person and based solely on the aforesaid Provisional specification and letter of instructions. That these papers are attached to and made a part of the affidavit under Rule 76 executed by said Marshall Rogan.

"That affiant is informed and believes that the said Marshall Rogan is 14 years of age and a freshman in high school at the Manhasset High School.

"That the aforesaid Marshall Rogan may properly be considered as a person skilled in the art to which the invention described in the British specification appertains, but not an expert in said art."

We also quote the following from the affidavit of the young man:

"[He] deposes and says that he is 14 years of age and in the first year at Manhasset High School;

"That he has had some limited experience in servicing radio and television apparatus;

"That on March 5, 1949 he was given a memorandum from Mr. R. P. Morris together with an attached copy of provisional British specification, the papers of which are attached hereto and made a part hereof;

"That in accordance with the instructions in the memorandum and without any further help he prepared the sketches and description signed by him attached hereto and made a part hereof;

"That he had no difficulty in understanding how to apply the teachings of the provisional specification copy to normal television receivers; * * *."

The affidavit is accompanied by three figures of drawings with some explanatory writings. When this additional matter was brought to the attention of the Board of Appeals that tribunal ordered that it be remanded to the Primary Examiner "to make such disposition of said papers as he deems proper."

The drawings do not bear much resemblance to those which accompany the *complete* specification of the British patent, nor to the drawings of the Batchelor patent, so far as we can discern, but it is recognized that this is not necessarily a material matter, because even though the young man's drawings may differ in appearance from the patent drawings they may embody the invention. We, however, are unable to form any opinion as to whether they do in fact embody it.

In a supplemental statement upon this feature of the record, wherein he refused to withdraw his final rejection of February 11, 1949, the examiner said, *inter alia:* "* * * as has already been pointed out * * * the *provisional specification* [italics ours] does not set forth an embodiment of the invention as required by Rev.Stat., Sec. 4888. An operative embodiment of the invention evolved from the suggestion of the provisional specification would not compensate this deficiency."

The Board of Appeals declined to consider the affidavits, citing In re Oppenauer, 143 F.2d 974, 976, 31 C.C.P.A., Patents, 1248.

We there said: "* * * It is well-settled law that testimony will not be received for the purpose of explaining the disclosure of a pending application except in very exceptional cases. Cooper v. Downing, 45 App.D.C. 345, 1916 C.D. 227; Armstrong v. Levy, 58 App.D.C. 293, 29 F.2d 953, 1929 C.D. 113; Fishburn et al. v. Vincent, 88 F.2d 711, 24 C.C.P.A.,Patents, 1079."

Appellant alleges that the board erred in not considering the affidavits.

We do not think the board erred in this particular.

So far as the record discloses, no drawings were filed in Great Britain with appellant's provisional specification. Consequently, there was no disclosure there by that method. We may assume that English law did not require the filing of drawings with *provisional* specifications, but however that may be, it is required

that drawings be a part of the specification of an application filed in the United States when practicable. R.S. §§ 4889, 4890, and 4891 as codified in 35 U.S.C.A. § 34, provide: "When the nature of the case admits of drawings, the applicant shall furnish one copy signed by the inventor or his attorney in fact, which shall be filed in the Patent Office; and a copy of the drawing to be furnished by the Patent Office, shall be attached to the patent as a part of the specification."

That the nature of this case admitted of drawings is demonstrated by the fact that both the British and the Batchelor United States patents have them.

We have given most careful consideration to the arguments, well presented before us in the brief and orally by appellant's counsel, to the effect that where there is knowledge of the teachings of prior art sufficient, when coupled with disclosures such as are presented in appellant's provisional specification, to enable those skilled in the art to practice the invention, nothing more of detail is required. It seems to us that the English practice requiring a complete and detailed specification in addition to the provisional specification is itself something of a refutation of that idea. However that may be, the procedure here, of course, is governed by United States law.

■ In sustaining the decision of the board affirming that of the examiner we do not mean to set the stamp of our approval upon all the reasoning in which those tribunals indulged, nor are we prepared to agree fully with all the arguments made by the Solicitor for the Patent Office. It appears to us that to adopt his position in all its aspects would have the practical effect of eliminating the possibility of a provisional specification being accepted as a sufficient disclosure in almost any case involving it that might arise. We are not prepared to go to the extent of holding that.

In the interference case of Burt v. Coats, 47 App.D.C. 185, the Court of Appeals of the District of Columbia sustained a claim as to certain elements of an invention as described in one of the counts being disclosed sufficiently in a provisional specification of a British patent "to enable one skilled in the art to understand their construction and mode of operation." The facts of that case, which was one of many cited on different points by appellant during the prosecution of this case in the Patent Office and before us, are not stated fully in the court's opinion, but evidently the provisional specification there involved must have been clearer and fuller than the one here involved.

We feel quite confident that the United States Patent Office would not and should not grant a patent upon an application having a specification as meager and incomplete as appellant's British provisional specification, nor would it be either proper or permissible to accept affidavits in order to establish facts which the specification itself should recite in order to conform to the mandatory provisions of the pertinent statutes.

The decision of the Board of Appeals, sustaining the Primary Examiner's rejection of the claims for lack of sufficient disclosure in the provisional specification of appellant's British patent, is affirmed.

Affirmed.