**YASUKO KAWAI et al., Appellants,**

v.

**Werner METLESICS and Leo Henry K. Sternbach, Appellees,**

**Application of Alan Hodgson LAIRD and John Selwyn Morley.**

**Application of Paul Martin HARDY et al. (two cases).**

**Patent Appeal Nos. 8774, 8838–8840.**

United States Court of Customs and Patent Appeals.

June 21, 1973.

John T. Fedigan, John T. Miller, Wenderoth, Lind & Ponack, Washington, D. C., attorneys of record for appellants.

Hugh A. Chapin, New York City, attorney of record for appellees. Samuel L. Welt, Nutley, N. J., William H. Epstein, Bernard S. Leon, Nutley, N. J., Hoffmann-La Roche Inc., Paul H. Heller, Laurence H. Pretty, Kenyon & Kenyon Reilly, Carr & Chapin, New York City, of counsel.

Paul N. Kokulis, Washington, D. C., Cushman, Darby & Cushman, Washington, D. C., attorneys of record, for Alan Hodgson Laird and Paul Martin Hardy. Lawrence A. Hymo, Edgar H. Martin, Fred S. Whisenhunt, Jr., William T. Bullinger, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

■ These are four appeals from decisions of the Patent Office Board of Appeals and the Patent Office Board of Interferences. The outcome in these appeals, three from the Board of Appeals and one from the Board of Interferences, will in each case be determined by the answer to a question of law common to all four. That question is whether an application for patent filed in a foreign country must contain a disclosure of an invention adequate to satisfy the requirements of the first paragraph of 35 U.S.C. § 112 if a later filed United States application claiming that invention is to be accorded the benefit of the filing date of the foreign application as allowed by 35 U.S.C. § 119.

In each of these appeals, the board involved concluded that the foreign application must satisfy the requirements of section 112 if it is to be the basis of a claim for priority under section 119. We affirm those decisions.

*Background to Appeals Nos. 8838, 8839, 8840*

These appeals from decisions of the Patent Office Board of Appeals involve three commonly assigned applications.[1] In each of these cases, filed by British inventors, all of the claims in question, which were directed to chemical compounds per se, were rejected by the examiner as unpatentable under 35 U.S.C. § 102(a) or 35 U.S.C. § 103. The rejections were made in view of references which appeared in the literature and had effective dates prior to the date on which the applications in question were filed in the United States.

In order to avoid the effect of these references, appellants sought to obtain for their United States applications the benefit of the earlier filing dates of certain British provisional specifications. The filing dates of the latter antedated the publication dates of the references in question. Therefore, if the United States applications were accorded the benefit of the filing dates of the British provisional specifications, these references would not be prior art under sections 102(a) or 103. Appellants apparently agree that the rejections would be proper if the references can be regarded as prior art since the articles describe the same research efforts which lie be-

1. *Appeal No. 8838 involves serial No. 474,178 filed July 22, 1965; appeal No. 8839 involves serial No. 461,515 filed* June 4, 1965; appeal No. 8840 involves serial No. 462,107 filed June 7, 1965.

hind the applications involved in these appeals.

The examiner refused to accord the United States applications the benefit of the filing dates of the earlier British applications. The basis for this refusal was his determination that the British provisional specifications were not adequate to meet the disclosure requirements found in the first paragraph of section 112.[2] More specifically, the examiner had this to say:

The disclosure of utility * * * is not deemed to be sufficient to comply with the disclosure requirements for U.S. applications mandated by 35 U.S.C. 112. That a foreign application must comply with 35 U.S.C. 112 to be entitled to the benefit of the foreign filing date for the purpose of overcoming a reference is set forth in M.P.E.P. 201.15 which reads: "The foreign application must be examined for the question of sufficiency of the disclosure under 35 U.S.C. 112 * * *."

The board sustained the examiner on this point and appellants' attorney conceded at oral argument before this court that the British provisional specifications would not satisfy, if applicable, the requirements of section 112. Therefore, in these appeals the only issue before this court, solely a legal one, is whether the requirements of that section are to be applied against the British applications.

*Background to Appeal No. 8774*

This appeal is from the decision of the Patent Office Board of Interferences awarding priority of invention to Metlesics et al., the senior party, as to a single count relating to certain 1, 4–benzodiazepine–2–one compounds.

Kawai et al. (Kawai) became involved through their application serial No. 675,249 filed October 13, 1967. Metles-

ics et al. (Metlesics) became involved through their application serial No. 629,934 filed April 11, 1967.

In view of the respective filing dates, Kawai had the status of junior party when the interference was declared and, therefore, had the burden to establish by a preponderance of the evidence that they were entitled to the award of priority. During the interlocutory stage of the interference, Kawai presented a motion under Patent Office Rule 231(a)(4) to be accorded the benefit of the filing date, October 14, 1966, of Japanese application serial No. 67766/66, as would be allowed by section 119, and to shift the burden of proof to Metlesics.

This motion was denied by the primary examiner on the ground that the Japanese application did not comply with 35 U.S.C. § 101 or 35 U.S.C. § 112. The examiner said:

Thus for Kawai to receive the benefit of priority based on the Japanese application, the Japanese application must meet the statutory requirements for a proper United States application including such requirements as 35 U.S.C. 101 and 35 U.S.C. 112, since a United States application, in order to be proper, and to be relied upon for benefit of priority under 35 U.S.C. 120, must comply with the utility and how to use requirements of 35 U.S.C. 101 and 35 U.S.C. 112.

Ultimately, the examiner concluded that the Japanese application did not meet these requirements, meaning Kawai would be restricted for priority purposes to the filing date of the United States application. The Board of Interferences sustained the examiner's decision, thus prompting this appeal by Kawai.

In this appeal, appellants argue that the requirements of section 112 should

2. The first paragraph of 35 U.S.C. § 112 reads:
   The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

not be read into section 119. However, they do not concede that the Japanese application is inadequate to meet the requirements of section 112. In that respect this appeal is unlike those coming from the Board of Appeals.

If appellants' Japanese application does meet the requirements of section 112, they would be entitled to the benefit of its filing date no matter what decision is made by us regarding the applicability of its provisions to foreign-filed applications relied upon for priority purposes. However, we first turn our attention to the question of whether a foreign application must meet the disclosure requirements of our law.

## OPINION

### The Requirements of Section 112 and Foreign Applications

This court has extensively discussed the history and purpose of section 119 in In re Hilmer, 359 F.2d 859, 53 CCPA 1288 (1966). However, we think a brief review here will be an aid to understanding our decision.

The predecessor statute (R.S. 4887) to section 119 was enacted on March 3, 1903 (32 Stat. 1225). The purpose of the earlier statute was to secure for United States inventors certain benefits under a treaty known as the Convention of Paris for the Protection of Industrial Property 20th March 1883 (Paris Convention). The United States had become an adherent to this treaty in 1887.[3]

Prior to the time when the treaty became effective, an inventor's right to a patent could be defeated in most countries if prior to the date an application for patent was filed, a publication or use of the invention by the inventor or a third party had occurred in the country where the application was made. In some countries, e. g., France, a publication or use anywhere in the world would be sufficient to defeat the applicant's right to a patent. This would be true even though the inventor had made an application for a patent. on the same invention in another country, usually his native country, prior to the occurrence of any of these disabling events.

Article 4 of the Paris Convention represented an accord among the signatories whereby an inventor could deposit an application in one Convention country, usually but not necessarily his own, and delay filing in a second for up to seven months (later extended to twelve months) without losing his right to a patent because of an intervening use or publication. This right to delay filing is what we now refer to as the "right of priority" recognized in section 119.

It was also recognized that this right of priority extended to those cases where two applications for patents on the same invention were filed in a Convention country by different inventors. In such a case an applicant could have his application given the benefit of the filing date of an earlier application in another Convention country.

In effect, then, with adoption of the Paris Convention, an applicant's rights in one country insofar as they are affected by the filing date of a patent application could be determined as of the filing date of an earlier filed application in another country if both countries adhered to the Paris Convention. This was a particular advantage for an applicant in those countries where, unlike in the United States, the first to file for a patent on an invention is entitled to it even though he might not have been first to make the invention.

. The benefit of an earlier filing date in the United States is manifest by the factual patterns behind the appeals now before us. In one circumstance the benefit of an earlier filing date makes it possible to avoid the effect of otherwise pertinent prior art if the claims come to be rejected under sections 102 or 103 in view of that art. In the other circumstance, the benefit of an earlier filing

---

3. Senate approval came on March 2, 1887 and President Grover Cleveland ratified on March 29, 1887.

date may make it possible for a party to obtain an award of priority in an interference where otherwise he might fail.

The Paris Convention was not, however, self-executing and required implementing legislation. The bill eventually enacted by Congress had been drafted by a commission created by Act of Congress (30 Stat. 431) in 1898 to study the effect of the Paris Convention on United States law. The commission submitted a report, dated November 27, 1900 and printed in 1902, entitled "Report of the Commissioners Appointed to Revise the Statutes Relating to Patents, Trade and Other Marks, and Trade and Commercial Names," Senate Document No. 20, 56th Congress, 2d Session.

Article 4 of the Paris Convention in effect at the time this report was made read as follows:

Any one who shall have regularly deposited an application for a patent of invention, of an industrial model, or design, of a trade or commercial mark, in one of the contracting States, shall enjoy for the purpose of making the deposit in the other States, and under reserve of the rights of third parties, a right of priority during the periods hereinafter determined.

In consequence, the deposit subsequently made in one of the other States of the Union before the expiration of these periods can not be invalidated by acts performed in the interval, especially by another deposit, by the publication of the invention or its working by a third party, by the sale of copies of the design or model, by the employment of the mark.

The periods of priority above mentioned shall be six months for patents of invention and three months for designs or industrial models, as well as for trade or commercial marks. They shall be augmented by one month for countries beyond the seas.

The language suggested by the commission to implement this part of the treaty was created by Congress as an amendment to R.S. 4887. That language appears with but inconsequential changes in section 119, first paragraph of the current statute. In pertinent part, section 119 reads as follows:

§ 119. Benefit of earlier filing date in foreign country; right of priority

An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, *shall have the same effect* as the *same application* would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed * * *. [Emphasis ours.]

The two sides in these appeals suggest different interpretations for this portion of section 119. These interpretations are based on different notions as to whether the language "same application" in the statute refers to the United States or the foreign application. Appellants insist that it refers to the United States application. In their view, the language of the statute compels the conclusion that the United States application is to be treated as if it were filed in the United States on the date the foreign application was filed. For that reason they argue that only the United States application need be judged to see if it meets the requirements of section 112 in order to be accorded the benefit of the earlier filing date.

Appellees suggest that section 119 should be interpreted as meaning that it is the foreign application that is to be considered as having been filed in this country on the date it was filed abroad. Therefore, they argue that it, the foreign application, must be examined to

determine if it meets the disclosure requirements of section 112 if it is to be given an effective United States filing date.

At the outset, we must disabuse each side of the notion that the language of the statute is so unambiguous as to compel one result or the other. It is our view that neither result can unimpeachably be drawn from the statutory language itself. In the very history to R.S. 4887, the Commissioner's Report, we find inconsistent language as to which application "same application" refers. At page 24 of the report, one can read:

We are, therefore, of the opinion that an amendment to the law should be made, providing that the foreign application shall have, in case an application is filed in this country by the applicant abroad within the specified period, the same effect as if filed here on the day it was filed abroad.

However, at page 27 of the report, the reduction of the opinion to a recommendation for a change in the law led to this language:

The application for a patent filed within seven months of the filing of an application for a patent for the same invention in any foreign country which is a party to the International Convention should be given the same force as regards the question of priority that it would have if filed on the date on which the foreign application was filed.

Because the statutory language is itself ambiguous, we must look behind the statute and its language in an effort to determine what standard the foreign application must meet. More precisely, we must look to the intent behind R.S. 4887 and cases decided under it, since section

119, first paragraph was meant to be a codification of existing law. See Reviser's Note, 35 U.S.C.A. § 119. We also think that a consideration of the interrelationship of section 119 to other parts of the statute will be helpful. All of this directs us, inevitably we think, to the conclusion that the foreign application must meet the requirements of section 112.

■ Under our law, an applicant for a patent, with one exception not relevant here, cannot establish a date of invention by proving acts done in a foreign country except as provided for in section 119. This prohibition is found in 35 U.S.C. § 104.[4] The only act done abroad that is referred to in section 119 is the filing of an application for patent in a foreign country. Therefore, the net effect of sections 104 and 119 is to restrict a foreign inventor, for purposes of United States law, to a date of invention which corresponds to the date when his United States application was filed unless there was an earlier filing of a foreign application. In this respect, the act of filing the United States application has the legal effect of being, constructively at least, a simultaneous conception and reduction to practice of the invention.

Since the foreign inventor is allowed by section 104 to establish a date of invention earlier than his United States filing date if he has made an earlier application for patent in another country, the "right of priority" accorded by section 119 can aptly be described as a *right to prove* a date of invention no earlier than the date of the foreign filing. It is our opinion that this "right to prove" a date of invention corresponding to the date of filing in the for-

---

4. § 104. Invention made abroad.

In proceedings in the Patent Office and in the courts, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country, except as provided in section 119 of this title. Where an invention was made by a per-son, civil or military, while domiciled in the United States and serving in a foreign country in connection with operations by or on behalf of the United States, he shall be entitled to the same rights of priority with respect to such invention as if the same had been made in the United States. [July 19, 1952, ch. 950, 66 Stat. 798.]

eign country requires that the act of filing the foreign application be regarded for purposes of United States law as a constructive reduction to practice of the invention in the same way that a filing of a United States application can be so regarded. That the filing of a foreign application could be so regarded under R.S. 4887 is pointed out in Broos v. Barton, 142 F.2d 690, 31 CCPA 1089 (1944). Therefore, we are of the opinion that the foreign application must meet the requirements of the first paragraph of section 112 if the act of filing it is to be regarded as a reduction to practice of the invention.

It is well understood that the act of filing a United States patent application can be regarded as being a constructive reduction to practice of an invention described therein as of the filing date. It follows naturally from this that the written specification in the application is the evidence proving the invention of that which is reduced to practice, i. e., the subject matter to which properly supported claims can be drawn.

We think it is now settled that an invention cannot be considered as having been reduced to practice in the sense that a patent can be granted for it unless a practical utility for the invention has been discovered where such utility would not be obvious. See 35 U. S.C. § 101; Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966); In re Kirk, 376 F.2d 936, 54 CCPA 1119 (1967); In re Joly, 376 F. 2d 906, 54 CCPA 1159 (1967). Therefore, a constructive reduction to practice, as opposed to an actual reduction to practice, is not proven unless the specification relied upon discloses a practical utility for the invention where one would not be obvious. We also think that *proof* of a constructive reduction to practice would also require that there be sufficient disclosure in the specification to enable any person skilled in the art to take advantage of that utility where it would not be obvious how this is done. This latter requirement is, of course, the so-called "how to use" requirement of section 112. It goes without saying that proof of a constructive reduction to practice would also require that the specification be sufficient to enable anyone skilled in the art to make the invention, i. e., the "how to make" requirement of section 112 should also be met by the specification.

If these are requirements which a United States specification must meet if it is to be adequate to support a reduction to practice by the act of filing the application, it follows that a foreign application must meet the same requirements if it is to be used to prove a date of invention. If only the United States application had to meet these requirements, the effect would be that it could be used as of its filing date to prove a date of invention which had occurred up to one year earlier. This would be an untenable position since section 104 prohibits the introduction of proof of any act other than the filing of the foreign application which could be used to buttress the claim that the reduction to practice had been complete as of the foreign filing date.

The net effect of not requiring the foreign application to meet the disclosure requirements of United States law would be that an inventor could file a patent application for promising chemical compounds in a foreign country not requiring a disclosure of utility and have up to one year to determine a practical utility before filing in the United States and yet claim an earlier date of invention. We do not think section 119 should be construed as permitting this.

In support of a contrary position, appellants point to the absence of a specific requirement that the foreign specification be adequate within the meaning of the first paragraph of section 112. This, they say, is evidence that no such requirement was intended particularly when considered in light of 35 U.S.C. § 120 which does require that an earlier United States application relied upon for priority purposes must meet these re-

quirements. After all, had it so intended, Congress could have used the same language in section 119 since both were enacted at the same time. Also, this difference in language between sections 119 and 120 was pointed out in In re Hafner, 410 F.2d 1403, 56 CCPA 1424 (1969).

The simplest answer to this argument is that section 120 was new to the 1952 statute, whereas section 119, first paragraph was a codification of existing law, as we have pointed out above. See also In re Hilmer, supra, at 359 F.2d 879, 53 CCPA 1314. Thus, there would not be any necessity of adding new language to section 119 if the disclosure requirements of United States law had been applicable to foreign applications under R. S. 4887. Appellants have not argued that Congress intended any change in the law when it enacted section 119. Furthermore, we think that absent a clear contrary intent of Congress, it might be necessary to read the requirements of section 112 into section 120 had it not been explicitly done. Again, this would be required because at least one purpose of section 120 is to provide proof that an invention had been reduced to practice at least as early as the filing date of an earlier United States application.

From our review of the cases arising under R.S. 4887, the only one in which the determinative issue was whether a foreign application must comply with disclosure requirements of United States law is In re Smyth, 189 F.2d 982, 38 CCPA 1130 (1951).

The inventor Smyth had presented claims to the Patent Office which were identical to those of an existing United States patent. His intent was to eventually have an interference declared between his application and the patent.

However, his claims were rejected on the patent. To avoid this rejection, he sought to rely upon an earlier filed British provisional specification for priority purposes. That application had a filing date earlier than the United States patent which was the basis of the rejection.

The Patent Office refused to accord to Smyth the benefit of the earlier filing date for the reason that the provisional specification was not sufficient to support the claims. This court affirmed the decision of the Board of Appeals that the disclosure was indeed inadequate to meet the requirements of R.S. 4888, the predecessor statute to section 112.[5] Before applying the requirements of R.S. 4888, the court said:

Perhaps the situation may be comprehended more readily when it is stated that, in our opinion, the case requires precisely the same consideration it would receive if the British provisional specification constituted the entire specification of appellant's United States application.

In other words, if there were here an application for patent the specification of which contained only the provisional specification of appellant's British patent, without drawings or other indicia, could such specification properly be held to meet the requirements of R.S. 4888, 35 U.S.C.A. § 33, for a written description defining the manner and process of making and using the device for which patent is sought in such full, clear, and exact terms as to enable any person skilled in the television art to make, construct, and use the same? That is what the statute demands; it is not satisfied with less; and the matter must be tested by that requirement.

5. Compare the language of the first paragraph of 35 U.S.C. § 112, see footnote 2, supra, with that of R.S. 4888 reading, in part, as follows:

Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same * * *.

Appellants have attempted to distinguish the *Smyth* case from the facts here on the ground that it did not involve a foreign application having as its only defect an inadequate statement of utility which is required of a United States application. They argue that the British specification in that case was so defective that it could not be determined if it described the same invention as that of the United States application. Assuming that their factual analysis is correct, we do not agree with appellants that these differences require a different result. In either case, i. e., under the facts of the *Smyth* case or under those of these appeals, the specification is so defective that the act of filing cannot be regarded as a constructive reduction to practice.

Further support for the position that the adequacy of the foreign application is to be tested under United States law is found in the Commissioner's Report. At page 24 of the report, it reads:

There is nothing in the letter or the spirit of the Convention to require the United States to give to the application in any respect except its date any standing to which it would not be entitled if filed by a citizen of the United States. Necessarily, in order to be given the advantage of the date of the foreign application, the application filed here must correspond in all substantial particulars with the foreign application; that is, it must be for the invention disclosed in the foreign application. Nothing in the nature of new matter or unwarrantable expansion of the disclosure of the invention in the original application can be permitted.

If the prior foreign application fails to disclose the invention disclosed in the application filed here, it can not serve as a basis for the claims of priority under the Convention.

The sufficiency of the disclosure and the novelty and patentability of the invention as found in the foreign application must be decided in accordance with existing laws, precisely as in a case of a like application filed by a citizen of the United States.

Notwithstanding the above, appellants argue that the only requirements a foreign applicant must meet are those specifically set forth in section 119 and enumerated by this court in Schmitt v. Babcock, 377 F.2d 994, 54 CCPA 1392 (1967). In that case the court said:

We construe section 119 as follows. Where a proper claim for priority is made a timely filed United States application is entitled to the earlier filing date of a foreign application when (1) "any person" or his "legal representatives or assigns" has (2) "previously regularly filed * * * in a foreign country which affords similar privileges" (3) a foreign application "for the same invention." The requirements of section 116 and Rule 45 are inapplicable to foreign applications where a claim to the benefit of an earlier filing date is made under section 119.

Appellants insist that they have met these requirements. In particular, they point out that disclosure of utility is not a factor in determining whether the foreign and United States application are directed to the same invention, citing In re Kirchner, 305 F.2d 897, 49 CCPA 1234 (1962).

We think appellants have read too much into the Schmitt v. Babcock decision as the adequacy of the foreign disclosure was not an issue in that case. Instead, the court was addressing itself to the question of whether the requirements of 35 U.S.C. § 116 must be met by a foreign application when a claim to the benefit of an earlier filing date is made under section 119.

In Schmitt v. Babcock, the appellants were seeking to rely upon an earlier filed application naming as inventor but one of the two named co-inventors on the United States application. The court held that it was not mandatory that the foreign application meet the requirements of section 116 in order to be a basis for an earlier filing date. However, we do not consider that decision

889

inconsistent with our conclusion in this case since the requirements of section 116 are not related to the question of whether the filing of the foreign application can be regarded as a constructive reduction to practice of the invention.

Furthermore, we are of the opinion that the requirements enumerated by us in *Schmitt* are merely the formal or procedural ones that must be met if the foreign application is to be treated as if filed here at the same time as abroad. The satisfaction of those requirements is *necessary* for obtaining the benefits of section 119, but may not be *sufficient* to enable the applicant to prevail in a given instance. The satisfaction of these requirements does not give the applicant more rights than he would have had if he had first filed in this country. In other words, the extent of the right of priority is measured by the content of the foreign specification. The applicant is entitled to the benefit of what it does disclose and no more. See In re Ziegler, 347 F.2d 642, 52 CCPA 1473 (1965).

Appellants also argue that it would be unfair to require that the foreign application be drafted in a manner sufficient to comply with section 112. They also hypothesize that in certain situations compliance with section 112 would render the invention described in the foreign application unpatentable in the country where originally filed.

With respect to these arguments we find ourselves in complete agreement with the observations of the Board of Appeals. To insure compliance with our law, by those seeking to obtain rights under our law, would require very little additional disclosure by an applicant. Furthermore, the effect of such a disclosure on patent rights in the foreign country as conjectured by appellants is based on pure speculation.

In summary, it is our view that the purpose of the Paris Convention was to have an application made in a foreign country treated as the equivalent of a domestic filing. We believe that equivalent treatment is accorded when the foreign application is weighed under the first paragraph of section 112 in the same manner as would a United States application under section 120. To accept appellants' view would mean than a foreign application would be given greater effect that would have been possible had it first been filed here. For these reasons we find ourselves in agreement with the Board of Appeals and the Board of Interferences on this issue.

*Adequacy of the Japanese Disclosure*

We next turn our attention to the argument of appellants in appeal No. 8774 that their Japanese application does meet the requirements of sections 101 and 112.

The count of the interference reads as follows:

1. A compound of the formula:

[A7614]

wherein R is selected from the group consisting of lower alkyl and phenyl and X is selected from the group consisting of hydrogen, halogen and nitro.

The only statements relating to the utility of the compound of the count are on pages 1 and 3 of the translation of the Japanese application found in the record. At page 1 it is said:

This invention relates to a method of producing 2H–1, 4-benzodiazepine–2–one derivatives which show pharmacological effects on the central nervous system.

At page 3 it reads:

Compound (III), [the compound of the count], exhibits excellent pharmacological effects on the central nervous system, and, as such, is of value as a medicine.

The Board of Interferences did not consider this sufficient disclosure and said:

The above statements in the Japanese application do not satisfy the requirements of 35 USC 112 that the specification contain a written description of the manner of using the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, . . ., to make and use the same." The Japanese application is devoid of any teaching as to what effects on the central nervous system are produced by the compounds of the count. Nor is there any teaching of the manner in which the compound is to be administered. It is well established that in order to constitute a constructive reduction to practice an application must contain sufficient disclosure to enable those skilled in the art to which the invention pertains to use the invention without extended experimentation. Here, the Japanese application does not meet this standard.

Appellants agree that these statements alone do not constitute adequate disclosure. However, it is their view that this disclosure illuminated by the prior art would be adequate to enable one skilled in the art to use the invention. To support this, they made of record a patent to Archer et al.[6] (Archer) which discloses compounds alleged to have anticonvulsant activity. About these compounds, Archer says:

Compounds of Formula I above and their pharmaceutically acceptable salts are useful as anticonvulsants, and are particularly noteworthy in that their efficacy for this purpose is not im-

paired by unwanted side effects. They can be administered internally, for example, parenterally or enterally in conventional pharmaceutical dosage forms. For example, they can be incorporated in conventional liquid or solid vehicles to provide elixirs, suspensions, tablets, capsules, powders and the like according to accepted pharmaceutical practice.

One such compound disclosed by Archer has the formula:

[A7568]

Appellants ask that it be compared with the following compound disclosed in their Japanese application and within the scope of the count:

[A7569]

6. U.S. 3,236,838 issued February 22, 1966.

The board had this to say with regard to such a comparison:

> The Archer et al. patent No. 3,236,838, relied upon by Kawai et al. to show that the utility of the compounds of the count was known, cannot be here relied upon to supply the written description of how to use the compound of the counts. The compounds described in the Archer et al. patent are not so closely related to the compounds of the count that it may be presumed that the compounds of the count and those of Archer et al. would have the same utility.

Appellants disagree with the board's conclusion. It is their position that the two compounds are so closely related that the utility of their compound and how to use it would be apparent to one of skill in the art in view of their disclosure that the compounds of the count can act upon the central nervous system. To support this, they argue that the structures of the two compounds differ only by a "nonfunctional" -CH$_2$-group and both compounds have the same func-

$$O$$
$$\|$$

tional CH$_3$-NH-C-group on the 1 position of the benzodiazepine ring. Ultimately, they say, one skilled in the art would easily conclude that the compounds within the count would function as anticonvulsants.

Appellees rebut this argument by pointing out that there is no basis to conclude that the -CH$_2$-group is nonfunctional. They point out that Cl-Cl, chlorine, differs from Cl-CH$_2$-Cl, methylene chloride, by a -Ch$_2$-group, yet the two compounds resemble each other very little in their chemical properties. They also point out that the functional group alluded to by appellants is attached to a nitrogen atom of the diazepine ring of the compound of the count, making a urea type structure, whereas in Archer there would be no urea structure.

We agree with the board that there are sufficient structural dissimilarities between the compounds of Archer and those of the count to preclude reliance on Archer to supply the missing disclosure on how to use the compounds disclosed. One skilled in the art is well aware that subtle changes in chemical compounds can radically alter the effects on a human body. In re Kirk, supra. Furthermore, from Archer alone we cannot conclude that a mere statement that compounds have utility as anticonvulsants is sufficient to enable one of skill in the art to use the desired compound. For example, we note that in the applications involved in the interference there is given a suggested dosage. At any rate, we think that the citation of Archer alone is insufficient evidence that appellants' application is adequate to enable one of skill in the art to use the invention. Accordingly, we think the Board of Interferences correctly held that appellants had failed to prove that their Japanese application would be adequate under United States law.

Because we hold that section 119 requires that a foreign application must meet the disclosure requirement of section 112 in the same way that a United States application must before the benefit of its filing date is accorded to a later United States application, the decisions of the Board of Appeals and the Board of Interferences in each appeal before us must be affirmed.

Affirmed.