52 CCPA

### Application of Karl ZIEGLER, Heinz Breil, Erhard Holzkamp and Heinz Martin.

#### Patent Appeal No. 7428.

United States Court of Customs and Patent Appeals.

June 24, 1965.

Arnold Sprung, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

The major issue in this appeal resolves itself into the question of whether a foreign application must show an entire generic invention as presently claimed in a U. S. application in order to be effective for priority, or whether it may be effective for priority purposes if it shows the same species as the refer-

ences which otherwise anticipate the claims. A preliminary issue is whether the term "alkali metal alkyl" is anticipated by a lithium aluminum tetraalkyl.

The application on appeal[1] discloses and claims a two-component catalyst useful for the polymerization of olefins, ethylene being shown in all the examples. The polymers produced by use of the catalyst may have molecular weights of 300,000 up to 3,000,000, in contrast to the highest obtained by "prior known methods" of about 50,000. Appellants' polyethylenes are almost completely linear in molecular structure and have a "high crystal content," generally amounting to "80% and in many cases even higher." Reflecting those differences are the properties of increased temperature stability and tear strength.

Generic claim 1 reads as follows except that the breakdown and numbering are ours:[2]

> 1. A polymerization catalyst composed of a mixture of a first first and second component,
>
> [I]  said first component being substantially composed of a member of the group consisting of
>
> [A]  alkali metal
>   [1]  alkyls and
>   [2]  aralkyls,
>
> [B]
>   [1]  complexes of alkali metal alkyls and
>   [2]  complexes of alkali metal hydrides,

with a metal organo-compound of the group of metals consisting of

> magnesium and zinc,[3] and

> [C]  complexes constituted of two metal organo-compounds of the group of metals consisting of
>   aluminum, magnesium and zinc,[4]

> [II]  said second component being a a heavy metal compound selected from the group consisting of
> [A]  the salts and
> [B]  the freshly precipitated
>   [1]  oxides and
>   [2]  hydroxides
> of metals of Groups IV–B, V–B and VI–B of the Periodic System, including
>   thorium and
>   uranium,
> each of said components being present in an amount with respect to the other, to cooperatively act therewith forming an active olefin polymerization catalyst.

The remaining claims directly or indirectly depend from claim 1, all but one of which contain more specific limitations on the second component. Claim 2 specifies the second component to be a chloride, claim 3 that the chloride of claim 2 is a titanium chloride, and claim 4 that the chloride of claim 2 is a titanium tetrachloride; claim 8 specifies the heavy metal of the second component to

1. Application of Karl Ziegler et al., serial No. 745,809, filed July 1, 1958 for "Catalysts." See note 6, infra.

2. This subparagraph or tabular claim format is extremely helpful in understanding the invention as claimed. We join the A.B.A. and Patent Office in encouraging its use. See 43 J.Pat.Off.Soc. 317, 319, 770 O.G. 737, and M.P.E.P. 608.01(m).

3. Appellants stated at oral argument that this limitation applies to both [B] [1] and [2].

4. Similarly, appellants indicated that this limitation means one component of the

[C] complex contains aluminum and the other either magnesium or zinc. Appellants' brief states:

* * * In the instant specification the broad claim, i. e. claim 1 is actually directed to three different types of catalyst systems, i. e. those specified under a), b) and c) above, namely a), those containing the alkali metal alkyls as the first component, b) those containing the complexes of the alkali metal alkyls or hydrides *with* magnesium or zinc organo metal compounds as the first component, and c) the complexes of organo aluminum compounds *with* organo magnesium or zinc compounds. [Emphasis ours.]

be chromium; claim 10 specifies the second component heavy metal to be zirconium, and claim 11, dependent therefrom, calls for zirconium tetrachloride. Claim 19 limits the first component of claim 1 to be the component we have labeled [I] [A] [1] above in our subparagraph form claim breakdown, the alkali metal alkyl. Allowed claims 9, 12, 13, 17 and 22 specify the second component as various acetonates, and allowed claim 20 limits the first component to be that which we have labeled [I] [C] above.

The references relied on for the rejections are:

| Brebner et al. | 2,822,357 | Feb. 4, 1958 |
| | (Filed Jan. 28, 1955) | |
| Brebner | 2,839,518 | June 17, 1958 |
| | (Filed Mar. 22, 1955) | |
| Shearer et al. | 2,887,471 | May 19, 1959 |
| | (Filed Nov. 29, 1955) | |
| Gresham et al. | 2,900,372 | Aug. 18, 1959 |
| | (Filed Aug. 30, 1954) | |
| Bruce | 2,909,512 | Oct. 20, 1959 |
| | (Filed Mar. 25, 1955) | |

The grounds of rejection within the context of this case appear to be based on both 35 U.S.C. §§ 102 and 103.[5] It is acknowledged by both the Patent Office and appellants that all the references show a component falling within the claimed definition of the second component; the issue centers around what the references show about the first component. Certain explicit admissions as will appear below simplify that issue. All discussion in the briefs centers around the species of first component labeled by us above as [I] [A] [1], alkali metal alkyls. The Patent Office has not directed our attention to anything in the references which would indicate that they show more than that species of first component in combination with a claimed second component. Our views below are predicated on the assumption that the references show only that species, or fall within the range of obviousness of that species. Necessarily, the result would not be the same should the references overlap by more than that single species, as will be evident below.

The appealed application is stated to be a continuation-in-part of two applications, serial Nos. 554,609 and 554,631, both filed December 22, 1955.[6] No issue

5. The following table lists the specific grounds on which each reference was applied in rejecting the claims:

| Reference \ Claims | 1 | 2 | 3 | 4 | 8 | 10 | 11 | 19 |
|---|---|---|---|---|---|---|---|---|
| Brebner et al. | 102 | 102 | 102 | 102 | | 103 | 103 | 102 |
| Brebner | 102 | 102 | 102 | 102 | 103 | 102 | 102 | 102 |
| Shearer et al. | 103 | | | | 103 | | | 103 |
| Gresham et al. | 102 | 102 | | | | | | 102 |
| Bruce | 102 | 102 | 102 | 102 | | 102 | 102 | 102 |

6. The application states, as amended:

This invention relates to new and useful improvements in catalysts and is a continuation-in-part of copending applications Ser. No. 554,609 and Ser. No. 554,631 both filed December 22, 1955, which only contains material disclosed in said applications and which constitutes a consolidation of said applications.

is raised concerning the adequacy of the disclosures therein to support the claims on appeal. Both of the above mentioned parent applications were filed in the U. S. subsequent to the effective filing date of the references relied on for the rejection. However, all but one of the references, Gresham et al. (Gresham), would be antedated by granting the benefit of the filing date of two German applications, Z 4628 and Z 4629, both filed December 27, 1954.[7] The board made no clear statement that appellants were not otherwise entitled to the date of December 27, 1954, but was of the view that those foreign applications could not overcome the references (other than Gresham) since the foreign applications did not show the claimed invention, the appealed claims being drawn to a genus while the German priority applications show only one species. In that view, the correspondence between the showing in the reference and priority applications would not be material.

We have a necessarily preliminary issue raised by the fact that the Gresham reference, applied to claims 1, 2, and 19, if applicable, would be dispositive of those claims. Its date of August 30, 1954 is prior to December 27, 1954, the date of the two German applications. Appellants present two contentions concerning the applicability of Gresham.

First, appellants urge that Gresham is not available as a reference since they may rely on a third German application, Z 4348 IVc/39c filed in Germany, August 3, 1954, for priority. The date of Z 4348 is more than a year prior to the date of the two U. S. parent applications of the appealed application, and thus does not satisfy the time requirement of 35 U.S.C. § 119. Apparently recognizing that they are not entitled to rely directly on Z 4348, appellants state:

* * * attention is directed to the applicants' earlier copending application Serial No. 514,068 having the effective date for constructive reduction to practice in the United States as of the German priority application Z 4348 IVc/39c of August 3, 1954, which broadly discloses such metal alkyls in combination with the claimed second component * * *.

■ Although some 12 copending U. S. applications are mentioned in the appealed application, and two of them are specifically referred to as the instant copending parents both in the specification and oath, neither Z 4348 nor serial No. 514,068 is mentioned. There appears nothing of record which indicates that any relational status of either Z 4348 or serial No. 514,068 to the appealed application was claimed by appellants or accorded by the Patent Office. On the present record, the issue of whether there is any relation and whether appellants may be accorded those dates is not before us.

Second, the board held that the claimed first component species [I] [A] [1], alkali metal alkyls, is inclusive of the lithium aluminum tetraalkyls shown in Gresham, and that claims 1, 2 and 19 are thereby anticipated. The board stated:

Gresham et al. disclose an olefin polymerizing catalyst which comprises molybdenum chloride and a compound having at least one metal to hydrocarbon bond. Examples of the latter are Grignard reagents and lithium aluminum tetraalkyls. We are unable to agree with appellants' assertion that the latter compounds do not fall within the scope of the term "alkali metal alkyls" in the appealed claims. However this may be, *Gresham et al. also refer to "metal alkyls"* and Shearer et al. show that alkali metal alkyls are commonly used in olefin polymerizing processes. We will sustain the rejection of claims 1, 2 and 19 as unpatentable over Gresham et al. [Emphasis ours.]

[7] The full designation of the German applications, as given in the oath of the appealed application is:

Germany–Z 4628  IVc/39c—dated Dec. 27, 1954
Germany–Z 4629  IVc/39c—dated Dec. 27, 1954

That portion of the disclosure of Gresham which was said to "also refer to 'metal alkyls'" appears to be as follows:

It has also been known heretofore (U. S. Patents 2,212,155, 2,475,520, 2,467,234) that certain *metal alkyls* and Grignard reagents are capable of initiating the conversion of ethylene to solid polymers through a free radical mechanism at high pressures. * * * [Emphasis ours.]

Appellants argue that alkali metal alkyls are not inclusive of alkali metal *aluminum* alkyls of Gresham, either in fact or within the meaning which appellants intend. Appellants' state in their specification:

Suitable organo-alkali metal compounds for use in the present invention are alkali metal alkyls and aryls, for example lithium, sodium or potassium methyl, ethyl, propyl, isobutyl and higher (in excess of $C_5$) alkali metal alkyls. Convenient higher alkyls are for instance those within the range of average composition of octyl or dodecyl or their mixtures. The higher-alkyls are without limitation to the number of carbon atoms. Examples of aryls which may be employed are: phenyl, tolyl, xylyl and naphthyl and include such aralkyls (the metal is linked to the aliphatic chain) as benzyl or phenyl ethyl. *It is also possible to use complex compounds of these alkali metal alkyls or aryl with organic compounds of aluminum, magnesium or zinc* such as are described in said co-pending Applications 692,020, 482,412, 482,413 and 554,631, for example with alumium trialkyls or aryls or alkyl or aryl aluminum halides or hydrides or corresponding Zn or Mg compounds. It is also possible to use *complex compounds of alkali metal hydrides with organic compounds of aluminum, magnesium or zinc. Thus* compound[s] of the formulae: $Na/Al(C_2H_5)4/$, $Li/Al(CH_3)_2H_2/$, $Na/Al(C_6H_5)_3H/$ or $Mg/Al(C_2H_5)_4/2$, can be used. [Emphasis ours.]

We are satisfied that alkali metal alkyls are not inclusive of the aluminum-containing compounds shown in Gresham. The aluminum-containing compounds are compounds of the nature of complexes, and as such are distinctly different from the alkali metal alkyls such as butyl lithium. The reference by Gresham indicates merely that some unnamed "metal alkyls," which could be merely a reference to aluminum trimethyl, for example, had been used *alone* in a high pressure process. We fail to see how such a passing reference to "metal alkyls" lends strength to the board's conclusion that lithium aluminum tetraalkyls are an art-recognized subclass of the alkali metal alkyls. Alkali metal alkyls are not alkali-metal *metal* alkyls. Moreover, it is clear that appellants did not regard an aluminum-containing complex, such as the lithium aluminum tetraalkyl of Gresham, to be an alkali metal alkyl as defined in their claims, particularly since they refer to the compound formed when aluminum is present as a "complex compound." We conclude, therefore, that Gresham does not anticipate claims 1, 2, or 19 by disclosing an alkali metal alkyl in combination with a second component.

Gresham also discloses the use of Grignard reagents, organic magnesium compounds of the general type R–Mg–X where R is an organic radical and X is a halogen, in combination with a heavy metal chloride, e. g., molybdenum chloride. While all but appellants' claim 19 include Grignard type reagents in the first component species [I] [B], and [I] [C], Grignard reagents are not used alone with the second component. Appellants' first species components [B] and [C] call for Grignard reagents as one member of two components which form complexes. The *resulting* complex first component is used with the second component. Gresham, in disclosing a Grignard reagent alone plus a second component, thus cannot be said to be anticipatory of the claims.

With regard to the remaining four references, Brebner et al., Brebner,

Shearer et al., and Bruce, appellants state:

> None of the references show, or have been cited to show groups b) or c) [our [B] or [C]] i. e. the complexes of the alkali metal compounds with magnesium or zinc organo metal compounds, or the complexes of the organo aluminum compounds with the magnesium or zinc organo metal compounds and in fact these latter complexes where specifically claimed have been allowed * * *.

Appellants also state that "* * * Brebner et al. *is* admittedly an effective reference under 35 U.S.C. § 102(a) and (e), unless the record shows that the applicants herein made the invention before the filing * * * date of the Brebner et al. patent." Similarly, appellants admit the Bruce patent "discloses the use of an alkali metal alkyl [species labeled [I] [A] [1], supra] as the first component of the catalyst system." With regard to the patents to Brebner and to Shearer et al., appellants note that their disclosures show somewhat less than that of Brebner et al. or Bruce, and are no better as to filing date. Except as to claim 8 those two references cover all the claims with a section 102 rejection. Brebner and Shearer et al. are said to teach the chromium of claim 8 and are used for a section 103 rejection.

The board, while broadly mentioning some disclosure in the references of hydrides and Grignard reagents, does not point to any clear showing that such components fall within the terms of the claims. For reasons detailed above with respect to Gresham's Grignard reagents, we also are unable to discern that such disclosure of hydrides and Grignard reagents falls within the terms of the claims as defined in species [B] and [C] of the first component. We are left with the view that the references, and admittedly the German applications re-

lied on for priority date, both show members of the same species as claimed.[8] The legal issue thus is whether appellants can obtain the benefit of their foreign applications even though they disclose only that part of the claimed invention which is shown by the references said to be anticipatory, rather than the entire invention claimed.

■■ The claims involved in this issue do not include claim 19. Claim 19 is drawn only to the species we have labeled [I] [A] [1] (which appellants call the "a)" species), the alkali metal alkyls. As we have held above, Gresham is not applicable art. Since claim 19 is no broader in scope than either of the two German applications, even under the view of the law taken by the Patent Office there is no reason not to accord that claim the benefit of the foreign filing date. Priority being accorded, the remaining four subsequently dated references must fall. See In re Ruscetta, 255 F.2d 687, 45 CCPA 968, 970. Accordingly we *reverse* the board as to claim 19.

The remaining claims, 1–4, 8, 10, and 11 vary only as to the specificity of the second catalyst component, thereby being broader in scope than the German applications on which appellants rely for priority to remove Brebner et al., Brebner, Shearer et al., and Bruce. By analogy to In re Stempel, 241 F.2d 755, 44 CCPA 820, appellants argue:

> * * * In the instant situation the applicants' prior applications are to the same invention claimed herein insofar as the pertinency of the cited art extends. While certain of the claims involved herein such as claim 1, are extended to include additional inventive subject matter, this additional subject matter is not pertinent with respect to the disclosure of the references and cannot detract from the applicants' right to obtain the benefit of the earlier applications for the same

---

8. We are aware that what we have herein termed a "species" of the first catalyst component, [I] [A] [1] is indeed a class of compounds. However, since it is claimed as a class, any member of the class anticipates it.

segment of the invention disclosed therein which segment is the only segment with respect to which the cited art has any pertinency.

Appellants urge that the German "priority application[s] * * * may be used to effectively ante-date a reference having a later effective date which solely shows * * * [the same] type of catalyst system." The board's view was as follows:

We would point out that when reliance is placed upon an applicants' prior application to antedate a reference, the situation is governed by 35 U.S.C. 120, rather than by the rule in In re Stempel. Applicants may rely upon the date of their earlier filed application for their claimed invention only if *the invention* is disclosed in the earlier application. In this connection, we note In re Ruscetta et al., 45 CCPA 968, 1958 C.D. 348, 733 O.G. 577, 255 F.2d 687, 118 USPQ 101 and In re Moreton, 50 CCPA 948, 312 F.2d 954, 136 USPQ 479.[9] [Emphasis ours.]

The pertinent portion of 35 U.S.C. § 119 provides:

§ 119. Benefit of earlier filing date in foreign country; right of priority

An application for patent *for an invention* filed in this country by any person who has * * * previously regularly filed an application for a patent for *the same invention* in a foreign country * * * shall have *the same effect as* the same application would have *if filed in this country* on the date on which the application for patent for the same invention was first filed in such foreign country * * *. [Emphasis ours.]

■■ We must consider the import of the phrase "for the same invention" in section 119. While we are cognizant of the fact that a species *may be* patentably distinct from a genus, it is clear that in this case the earlier disclosed species is broadly the same invention as the genus. Thus the requirement of section 119 that only "the same invention" in the later application as is shown in the earlier will obtain the benefit of the earlier filing date is satisfied here. We see in the statute no mandate contrary to according appellants the date of December 27, 1954 for so much of the generic invention as is otherwise satisfactorily disclosed as a species in the foreign applications, for the purpose of overcoming references.

The solicitor for the Patent Office relies heavily on In re Moreton, 312 F.2d 954, 50 CCPA 948, to support its position that the foreign applications are not sufficient to remove the four references. In the Moreton case we held that a two-

9. The board also stated:

"Appellants' reference to their prior applications is in too broad and general terms to enable us to determine whether the claims find support in such applications. Appellants should have specifically pointed out wherein each of the appealed claims is supported in each prior application that is relied upon. It is pointed out that even under the rule of the In re Stempel case, a reference is not withdrawn on the basis of a showing of reduction to practice of a species if the reference still contains anticipatory matter in respect to broader claims in appellants['] case.

Appellants point out in their brief that they had previously specifically indicated in detail to the examiner where support is found in the prior applications. The solicitor now makes no point of the board's broad statement, thus compelling the view that no rejection was meant thereby. The board's comment about In re Stempel appears no more than an observation not relevant to the facts at bar since we have not found where the Patent Office has pointed out in the references any portions which show matter broader than the species of the priority applications, and which falls within the terms of the appealed claims. Nor have we, within our limited ability in such matters, been able to find such disclosure in the references. Convincing of the correctness of this view is the fact that claims to another species in the Markush group in the claims has been allowed by the board. Claims 17 and 20, allowed by the board over the references, are drawn to those first component complexes which we have labeled [I] [C].

component fire-resistant hydraulic fluid composition was not the same invention as a three-component fluid, two of whose components were the same, in an earlier filed U. S. application, and thus the three-component invention was no support for the two-component invention.[10]

■ Some of the language in In re Moreton, 312 F.2d at 958, 50 CCPA at 954, which disproves of a test " * * * whether the disclosure of the parent case is sufficient to antedate so much of the claimed disclosure as the patent shows * * *." while applicable to the facts of the case therein, was neither essential to the decision nor controlling of the same result here. This court was not faced with a species-Markush genus situation in the Moreton case. The question dealt with there was whether appellant showed clearly in his parent application that there were two separate, although related, compositions. Since the parent application in that case indicated to the court that there were three "essential ingredients" in the parent composition, it could not provide support to overcome the reference showing of a two-component composition. There was no such correspondence between the teachings in the parent application and the reference in the Moreton case as there is here between the foreign applications and the references. In the present case the foreign applications disclose the identical species shown in the references. Further, the relationship between the type of invention in the foreign applications and appealed application is here quite different than that between the applications in Moreton. Here the relationship is that of species-Markush genus, while in Moreton it was more in the nature of two distinct inventions—two different combinations.

■■ We are of the opinion that the reasoning of In re Stempel, supra, is effective to remove the four references as to the single species they disclose. In Stempel the date of prior invention was established by affidavits. The foreign applications here involved by statute give a "right of priority" of invention as to everything pertinent that the references show, as of a date prior to the effective date of those references. We see no reason why the logic of that case should not apply here. Appellants here stand in the same relation to the prior art as did Stempel in that case. As this court stated (241 F.2d at 760, 44 CCPA at 826):

> In the case of a reference, it is fundamental that it is valid only for what it discloses and if the applicant establishes priority with respect to that disclosure, and there is no statutory bar, it is of no effect at all.

It is the showing in the foreign application which gives to the later U. S. application the benefit of its date. We distinguish the priority showing *for the purpose of overcoming a reference* from the *amount* of disclosure which an application must provide to support a generic claim, In re Stempel, supra. Consistent with this view is the well-settled rule that disclosure of a species in a reference is sufficient to prevent a later applicant from obtaining generic claims, should the reference not be overcome. In re Ruscetta, supra. There is no question here that the applications adequately support the *broad* claims, once the references have been antedated as to the narrow subject matter which they disclose.

The Patent Office also relies on In re Steenbock, 83 F.2d 912, 23 CCPA 1244 and In re Ruscetta, supra, in support of its position. Both those cases involved a statutory bar, but no such bar is involved here. As was carefully and repeatedly noted in the Ruscetta case, the factor of a statutory bar there makes the situation in In re Stempel, supra, not

10. The issue raised by the board in Moreton as to a prior decision by an examiner being "res adjudicata" on a section 112 issue, while implicitly disapproved by the manner of handling the issue in Moreton, has been explicitly overruled in In re Hitchings, this term, 342 F.2d 80, 52 CCPA ——; noted, 33 Geo.Wash.L.Rev. No. 5 (June 1965).

comparable, and we consider the same distinction to exist here.

Thus, we are of the view that the two German applications are directed to the same invention claimed herein insofar as the same is disclosed in the cited prior art. The German filing dates are therefore available to appellants to overcome references whose effective date intervenes between those applications and the corresponding U. S. application. Accordingly the decision of the board affirming the examiner's rejection of claims 1–4, 8, 10 and 11 is also reversed.

Reversed.