**In re Jacques GOSTELI, Ivan Ernest and Robert B. Woodward.**

No. 88–1611.

United States Court of Appeals, Federal Circuit.

April 24, 1989.

Suggestion for Rehearing In Banc Declined Jan. 11, 1989.

Rehearing Denied May 18, 1989.

Suggestion for Rehearing In Banc Declined July 6, 1989.

Bruce M. Collins, Mathews, Woodbridge, Goebel, Pugh & Collins, P.C., Morristown, N.J., argued for appellant.

Fred E. McKelvey, Sol., Com'r of Patents and Trademarks, Arlington, Va., argued for appellee. With him on the brief were Charles E. Van Horn, Deputy Sol., John W. Dewhirst and Harris A. Pitlick, Associate Sol.

Raymond C. Stewart, Birch, Stewart, Kolasch & Birch, Falls Church, Va., was on the brief for amicus curiae, Kitamura et al.

Before BISSELL and ARCHER, Circuit Judges, and RE, Chief Judge.*

BISSELL, Circuit Judge.

## DECISION

The decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Appeal No. 665–18 (June 30, 1988), affirming the examiner's final rejection of claims 48–51 in the patent application, Serial No. 423,-348, of Jacques Gosteli, Ivan Ernest and Robert B. Woodward [hereinafter Gosteli or Applicants], under 35 U.S.C. § 102(e) (1982), is affirmed.

## BACKGROUND

Gosteli's patent application discloses bicyclic thia-aza compounds containing a beta-lactam ring unsubstituted in the beta-position and having antibiotic properties. The claimed compounds are chemical intermediates used in the preparation of antibiotics known as 2–penems. Claims 48 (see Appendix A) and 49 are Markush-type genus claims, and dependent claims 50 (see Appendix A) and 51 are subgenus claims, each consisting of 21 specific chemical species. The examiner rejected claims 48–51 under section 102(e) as being anticipated by United States Patent No. 4,155,912 (Menard). Menard discloses, but does not claim, a first species, 2–[ (4R,S)–4–Acetylthio–2–oxo–1–azetidinyl]–2–hydroxyacetic acid $p$-nitrobenzyl ester, that is within the scope of claims 48 and 50, and a second species, 2–[ (4R,S)–4–Acetylthio–2–oxo–1–azetidinyl]–2–chloroacetic acid $p$-nitrobenzyl ester, that is within the scope of claims 49 and 51.

Attempting to antedate Menard, Gosteli claimed the benefit, under 35 U.S.C. § 119 (1982), of their Luxembourg patent application's foreign priority date. The disclosure of the Luxembourg application is not as complete as that of Gosteli's United States application. The Luxembourg application discloses a subgenus of the genus claimed in the United States application and specifically describes the two chemical species disclosed by Menard. Menard's effective date is December 14, 1977, seven months after the May 9, 1977, filing date of Gosteli's Luxembourg application, but five months before Gosteli's May 4, 1978, United States filing date. Thus, Menard is not an effective reference under section 102(e) if Applicants are entitled to their Luxembourg priority date.

The Board denied Gosteli the benefit of their Luxembourg priority date reasoning that:

> [Gosteli's] problem in attempting to antedate the Menard reference is that their Luxembourg priority application does not disclose the "same invention" in a manner that complies with the first paragraph of 35 USC 112 as is claimed in the claims on appeal (48–51). In other words claims 48–51 contain considerable subject matter which is not specifically disclosed in the Luxembourg application.
>
> . . . .

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a) (Supp. IV 1986).

Since [Gosteli's] Luxembourg application does not provide a written description of the entire subject matter set forth in the appealed claims 48–51, as required by the first paragraph of 35 USC 112, we have concluded that claims 48–51 have an effective filing date as of the May 4, 1978 filing date of [Gosteli's] grandparent application Serial No. 902,639, and not as of the Luxembourg filing date. Accordingly, [Applicants have] not antedated the Menard reference.

*Gosteli,* Appeal No. 665–18, slip op. at 2, 3.

Alternatively, Gosteli attempted to swear behind Menard by using declarations submitted under 37 C.F.R. § 1.131 (1988) (Rule 131). The Board rejected the use of Rule 131, because "the declaration does not ... contain 'facts showing a completion of the invention in this country before the filing date of' Menard." *Gosteli,* Appeal No. 665–18, slip op. at 4. Gosteli appeals from the Board's decision, and the Institute of Bio–Active Science, Nippon Zoki Pharmaceutical Co., Ltd., filed an amicus curiae brief.

## ISSUES

1. Whether claims 48–51 are entitled, under section 119, to the benefit of a foreign priority date.

2. Whether Rule 131 allows Gosteli to swear behind the two chemical species disclosed in Menard by establishing a constructive reduction to practice in this country based on Gosteli's foreign priority date of those two species.

3. Whether Gosteli's Luxembourg priority application provides a written description sufficient to support the entire subject matter of claims 48–51, as required by 35 U.S.C. § 112, ¶ 1 (1982).

## OPINION

### I. Section 119

■ Claims 48–51 of Gosteli's application stand rejected under section 102(e) as anticipated by Menard. The two chemical species disclosed by Gosteli's Luxembourg priority application are disclosed by Menard and also fall within the scope of the claims

on appeal. Section 102(e) bars the issuance of a patent if its generic claims are anticipated by prior art disclosing individual chemical species. *See, e.g., In re Slayter,* 276 F.2d 408, 411, 125 USPQ 345, 347 (CCPA 1960) (stating that species anticipate a generic claim). The parties agree that Menard is an effective anticipatory prior art reference unless Applicants are entitled to their Luxembourg priority date.

Generally, an applicant may antedate prior art by relying on the benefit of a previously filed foreign application to establish an effective date earlier than that of the reference. *See* 35 U.S.C. § 119; *In re Wertheim,* 541 F.2d 257, 261, 191 USPQ 90, 95–96 (CCPA 1976); Rollins, *35 USC 119– Description and Enablement Requirements,* 67 J.Pat.Off.Soc'y 386, 386 (1985). Under section 119, the claims set forth in a United States application are entitled to the benefit of a foreign priority date if the corresponding foreign application supports the claims in the manner required by section 112, ¶ 1. *Wertheim,* 541 F.2d at 261–62, 191 USPQ at 95–96; *Kawai v. Metlesics,* 480 F.2d 880, 887–89, 178 USPQ 158, 164–65 (CCPA 1973).

■ Gosteli contends that their rights under section 119 are determined by focusing on (1) what is the subject matter disclosed in the Luxembourg priority application, and (2) whether that subject matter removes Menard. We disagree with Gosteli's reading of section 119. The statute provides, in pertinent part:

An application for patent for an invention filed in this country by any person who has ... previously regularly filed an application for a patent for the same invention in a foreign country ... shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country....

35 U.S.C. § 119. The reference to the "invention" in section 119 clearly refers to what the claims define, not what is disclosed in the foreign application. *Cf. In re Scheiber,* 587 F.2d 59, 61, 199 USPQ 782,

784 (CCPA 1978) (stating that "invention" as used in 35 U.S.C. § 120 (Supp. IV 1986), refers to what is claimed). Section 119 provides that a foreign application "shall have the same effect" as if it had been filed in the United States. 35 U.S.C. § 119. Accordingly, if the effective filing date of what is claimed in a United States application is at issue, to preserve symmetry of treatment between sections 120 and 119, the foreign priority application must be examined to ascertain if it supports, within the meaning of section 112, ¶ 1, what is claimed in the United States application. *Compare Kawai*, 480 F.2d at 886, 178 USPQ at 162–63 (construing the section 112, ¶ 1 requirements of section 119) *with Scheiber*, 587 F.2d at 62, 199 USPQ at 784–85 (construing the section 112, ¶ 1 requirements of section 120).

At oral argument, the government conceded that if Gosteli claims the species disclosed in the Luxembourg application they would be entitled to the foreign priority date with regard to those claims. Thus, Menard would be ineffective as a reference against those claimed species, or any other claim properly supported by the Luxembourg disclosure as required by section 112, ¶ 1. We conclude, therefore, that claims 48–51 are entitled to the benefit of their foreign priority date under section 119 only if the foreign priority application properly supports them as required by section 112, ¶ 1. An application relying on the benefit of an earlier filing date in the United States would receive the same treatment under 35 U.S.C. § 120. *See Kawai*, 480 F.2d at 886, 178 USPQ at 163.

### "In re Ziegler"

The Federal Circuit has adopted as precedent the decisions of the Court of Customs and Patent Appeals (CCPA). *See South Corp. v. United States*, 690 F.2d 1368, 1369, 215 USPQ 657, 657 (Fed.Cir.1982). The government urges on appeal that *In re Ziegler*, 347 F.2d 642, 146 USPQ 76 (CCPA 1965), should be overruled as in conflict with *Wertheim, Kawai, Scheiber*, and *In re Smyth*, 189 F.2d 982, 90 USPQ 106 (CCPA 1951). According to the government, *Ziegler's* fundamental premise is

that a foreign application need show support for only so much of the claimed invention as is disclosed in the prior art reference to achieve a priority date for the entirety of the claimed invention. *Accord In re Kitamura*, 9 USPQ2d 1787 (Bd.Pat.App. Int.1988) (providing an extensive discussion by an expanded Board on the same issue).

*Ziegler* never mentions section 112 by name in its analysis of section 119, and yet the application of section 112 to section 119 had already been set forth in *Smyth*. *See Kawai*, 480 F.2d at 887–89, 178 USPQ at 163–65; *see also* Rollins, *35 USC 119–Description and Enablement Requirements*, 67 J.Pat.Off.Soc'y at 391–92 (discussing *Smyth*). We conclude that *Ziegler* did not examine section 112 compliance because the issue was not in dispute. The court stated that "[t]here is no question here that the [foreign priority] applications adequately support the broad claims, once the references have been antedated as to the narrow subject matter which they disclose." *Ziegler*, 374 F.2d at 650, 146 USPQ at 82–83. In other words, all claims in the United States application were properly supported, as required by section 112, ¶ 1, by Ziegler's foreign priority applications. Furthermore, both *Kawai*, 480 F.2d at 889, 178 USPQ at 165, and *Wertheim*, 541 F.2d at 262 n. 6, 191 USPQ at 96 n. 6, cite *Ziegler;* neither case recognizes a conflict nor an inconsistency.

However, we agree with the government that there is inconsistent language in these decisions. To the extent that *Ziegler's* language is inconsistent with that in *Kawai, Wertheim*, and *Scheiber*, that inconsistency has already been *sub silentio* removed. The CCPA's later decisions control because that court always sat *en banc*. Accordingly, we conclude that no conflict currently exists.

### II. *Rule 131*

As an alternative position, Gosteli contends that they can swear behind Menard, under Rule 131, by establishing a constructive reduction to practice in this country based on their foreign priority date of the two species disclosed by Menard.

They reason that the use of a foreign priority date to establish the reduction to practice component for a Rule 131(b) showing is authorized by *In re Mulder*, 716 F.2d 1542, 1544–46, 219 USPQ 189, 192–94 (Fed.Cir. 1983), and therefore, showing priority with respect only to as much of the invention as Menard discloses is needed. Gosteli cites the rationale in *In re Stempel*, 241 F.2d 755, 760, 113 USPQ 77, 81 (CCPA 1957), in support of their reasoning. We disagree.

Rule 131 requirements are quite specific. To antedate a prior art reference, the applicant submits an oath or declaration alleging acts that establish a completion of the *invention in this country* before the effective date of the prior art. 37 C.F.R. § 1.131(a).

The requirements and operation of section 119 differ from those of Rule 131. *Cf. Scheiber*, 587 F.2d at 61–62, 199 USPQ at 784 (explaining a similar contrast between section 120 and Rule 131). Rule 131 provides a mechanism for removing specific prior art references, whereas section 119 is concerned only with an applicant's effective filing date. *Cf. id.* Because section 119, unlike Rule 131, operates independently of the prior art, it is appropriate that the showing required under section 119 differs from that required under Rule 131. *Cf. id.*

This case is distinguishable from *Mulder*. Gosteli's declarations make no mention of acts in this country. Gosteli relies on their Luxembourg application for a constructive reduction to practice date for the two chemical species at issue. That reliance is misplaced. *Mulder* is not purely a section 119 case. In *Mulder*, the conception date was based on activity in the United States, a date earlier than the prior art. Mulder was permitted to establish a constructive reduction to practice date based on his foreign filing. However, the constructive reduction to practice date was after the prior art. Rule 131 permitted Mulder to swear behind the reference, from the constructive reduction to practice date back to his conception date. The use of a foreign filing date in such circumstances is not inconsistent with our decisions. In *Mulder*, there was no dispute about compliance with the section

112 requirements subsumed in section 119. *See Mulder*, 716 F.2d at 1543, 219 USPQ at 191 (stating that "[t]here is no question that applicants complied with all the formalities required by § 119 and related PTO rules").

Gosteli does not point to any activity inside the United States. Furthermore, Gosteli would not need activity in this country if section 119 gave them the benefit of an effective foreign filing date prior to Menard. Under these circumstances, Rule 131 is irrelevant. Thus, we affirm the Board; Gosteli cannot use the Rule 131 declarations filed to swear behind Menard.

*III. Written Description Requirement*

█ The Board found that Gosteli's Luxembourg application did not provide a sufficient written description of the entire subject matter of claims 48–51, as required by the first paragraph of section 112, *Gosteli*, Appeal No. 665–18, slip op. at 3, and, accordingly, section 119 was not effective to antedate Menard. Although Gosteli does not have to describe exactly the subject matter claimed, *In re Lukach*, 442 F.2d 967, 969, 169 USPQ 795, 796 (CCPA 1971), the description must clearly allow persons of ordinary skill in the art to recognize that Gosteli invented what is claimed. *Wertheim*, 541 F.2d at 262, 191 USPQ at 96. We review this factual inquiry under the clearly erroneous standard. *See id.*

"[T]he PTO has the initial burden of presenting evidence or reasons why persons skilled in the art would not recognize in the disclosure a description of the invention defined by the claims." *Id.* at 263, 191 USPQ at 97. In this case, the PTO has met that burden by pointing out a number of differences between what is disclosed in the Luxembourg priority application and what is claimed in Gosteli's United States application. Gosteli does not dispute that additional subject matter is present in the United States application. Accordingly, the Board's findings are not clearly erroneous.

The Board's decision is

AFFIRMED.

## APPENDIX A

Representative claims 48 and 50 of the Gosteli application are set forth below.

48. Compounds of the formula

in which

Z' represents oxygen, sulphur or a methylidene group optionally mono- or disubstituted by lower aklyl, cycloalkyl, cycloalkyl-lower alkyl, phenyl, phenyl-lower aklyl or esterified carboxy,

$R_1$ represents hydrogen; lower aklyl; lower aklyl monosubstituted by

hydroxy, lower alkoxy, lower alkanoyloxy, halogen, mercapto, lower aklylthio, carboxyl, carbamoyl, cyano, nitro, amino, amino mono- or di-substituted by lower alkyl, lower alkyleneamino or amino acylated by acetyl, phenoxyacetyl, tert.butoxy-carbonyl, benzyloxycarbonyl or p-nitrobenzeyl-oxycarbonyl;

carboxyl; protected carboxyl; aminocarbonyl; aminocarbonyl mono- or di-substituted by lower alkyl; cycloalkyl; cycloalkyl-lower alkyl; phenyl; naphthyl; phenyl-lower alkyl; phenyl, naphthyl or phenyl-lower alkyl mono-substituted by

lower alkyl, lower alkoxy, halogen, nitro, amino or di-lower alkylamino;

pyridyl; thienyl; furyl; pyridyl-lower alkyl; thienyl-lower alkyl; furyl-lower alkyl; lower alkylthio; lower alkenylthio; cycloalkylthio; cycloalky-lower alkylthio; phenylthio; phenyl-lower alkylthio; or lower alkylthio, lower alkenylthio, cycloalkylthio, cycloalkyl-lower alkyl-thio, phenylthio or phenyl-lower alkylthio monosubstituted by

hydroxy, lower alkoxy, lower alkanoyloxy, halogen, mercapto, lower alkylthio, carboxyl, carbamoyl, cyano, nitro,

amino, amino mono- or di-substituted by lower alkyl, lower alkanoylamino or lower alkyleneamino; and

$R_2A$ together with the carbonyl grouping $-C(=O)-$ to which it is attached represents a protected carboxyl group, in racemic or optically active form.

50. A compound of the formula (V) according to claim 48 selected from the group consisting of

2-[ (4R,S)-4-Acetylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-Phenylacetylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-(2-Furoylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-(3-Dimethylaminobenzoylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-(3-Methoxycarbonylpropionylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-Benzoylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-Acetoxyacetylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-Hexanoylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[ (4R,S)-4-tert.-Butylthioacetylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[(4R,S)-4-(4-*p*-Nitrobenzyloxy carbonylaminobutyrylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[(4R,S)-4-(3-*p*-Nitrobenzyloxy carbonylaminopropionylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[(4R,S)-4-(4-Benzyloxycarbonylaminobuytrylthio)-2-oxo-1-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester,

2-[(4R,S)-4-[2-(2-Phenoxyacetylamino)-acetylthio]-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester [sic]
2-[(4R,S)-4-Ethylthiothiocarbonylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester [sic]
2-[(4R,S)-4-(cis-2-methoxycarbonylvinylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid acetonyl ester,
2-[(4S)-4-(cis-2-(1)-menthyloxycarbonylvinylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid acetonyl ester,
2-[(4R)-4-(cis-2-(1)-menthyloxycarbonylvinylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid acetonyl ester,
2-[(4S)-4-(trans-2-(1)-menthyloxycarbonylvinylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid acetonyl ester,
2-[(4R)-4(trans-2-(1)-menthyloxycarbonylvinylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid acetonyl ester,
2-[(4R)-4-acetylthio-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester, and
2-[(4R,S)-4-(nicotinoylthio)-2-oxo-1-azetidinyl]-2-hydroxyacetic acid *p*-nitrobenzyl ester.