**NEW RAILHEAD MANUFACTURING, L.L.C.**

v.

**VERMEER MANUFACTURING COMPANY and Earth Tool Company, L.L.C.**

**No. Civ.A. 4:99–CV–355–Y.**

United States District Court, N.D. Texas, Fort Worth Division.

Sept. 28, 2001.

Roy W. Hardin, Locke, Liddell & Sapp, Dallas, TX, Geoffrey A. Mantooth, Decker, Jones, McMackin, McClane, Hall & Bates, Fort Worth, TX, for Plaintiff.

Joseph F. Cleveland, Jr., Brackett & Ellis, Fort Worth, TX, Jon Trembath, John D. Gould, Merchant & Gould, Minneapolis, MN, for Vermeer Mfg. Co.

Craig Buck Florence, John W. Slates, III, Gardere Wynne Sewell, Dallas, TX, for Earth Tool Co.

Alan H. Gordon, Alan H. Gordon & Associates, Houston, TX, Pro se.

### ORDER GRANTING EARTH TOOL'S MOTION FOR SUMMARY JUDGMENT

MEANS, District Judge.

Pending before the Court is the Motion for Partial Summary Judgment filed by

defendant Earth Tool Company, L.L.C. ("Earth Tool") on July 7, 2000. Plaintiff New Railhead Manufacturing, L.L.C. ("Railhead") filed a response in opposition to the motion on July 27, and Earth Tool filed a reply to Railhead's response on August 11. On August 13, 2001, after obtaining leave of Court, Railhead filed a supplemental response to the motion, and on August 27, Earth Tool filed a reply to Railhead's supplemental response. Oral argument was heard regarding Earth Tool's motion on September 19. After careful consideration of the briefs submitted by the parties, the evidence highlighted therein, the applicable law, and the arguments of counsel, the Court concludes that Earth Tool's motion should be granted.

### I. Facts

Railhead owns United States Patent 5,899,283 ("the '283 patent"), which claims an asymmetric drill bit used for horizontal directional drilling of rock. Railhead's "Incredibit" is an embodiment of the '283 patent. Railhead's '283 patent is based on an application filed November 12, 1997 as a continuation-in-part of a provisional patent application filed February 5, 1997.

The drill bit that is the subject of the '283 patent was invented by David Cox, co-owner of Railhead, in late 1995. Sometime between Christmas 1995 and New Year's 1996, Cox delivered a version of this bit to Earl Freeman, an employee of one of Railhead's customers, Eagle Pipeline, allegedly for experimentation. Freeman used the bit approximately six times on various Eagle Pipeline jobs throughout January 1996. Soon thereafter, Railhead manufactured hundreds of similar bits. Railhead sold one of the bits to Ferrell Construction at the end of March 1996. Railhead also admits that one or more bits embodying the '283 patent were sold prior to the end of May 1996. Indeed, Railhead's invoices reflect numer-

ous sales of the bit during the period from March to August 1996.

Railhead filed this lawsuit contending that the "Trihawk" drill bit manufactured by Earth Tool infringes Railhead's '283 patent. Earth Tool's motion seeks a summary judgment that the '283 patent is invalid because, inter alia, the bit embodying the '283 patent was on sale more than one year prior to the earliest filing date on which the '283 patent is based.

### II. Summary Judgment Standard

The summary-judgment standard on a patent claim is the same as the standard for other claims. *Avia Group Int'l v. L.A. Gear Calif., Inc.,* 853 F.2d 1557, 1560–61 (Fed.Cir.1988). Thus, Earth Tool is entitled to summary judgment if it demonstrates "that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). All reasonable factual inferences must be drawn in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A patent is, however, presumed to be valid. 35 U.S.C.A. § 282 (West Supp. 2001). As a result, "the burden of proving invalidity [is] on the attacker." *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1536 (Fed.Cir.1984). Consequently, on summary judgment, Earth Tool's "burden of demonstrating an entitlement to judgment as a matter of law includes the burden of overcoming the presumption of patent validity found in 35 U.S.C. § 282." *Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1022 (Fed.Cir.1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1358–61 (Fed.Cir.1999). "The standard of proof of facts necessary to support a legal conclusion of invalidity is 'clear and convincing.'" *Id.* (quoting *R.R. Dynamics, Inc. v. Stucki Co.,* 727 F.2d 1506, 1516

(Fed.Cir.1984)). As a result, in order to be entitled to summary judgment, Earth Tool must demonstrate that there is no genuine issue of material fact regarding the patent's validity and that clear and convincing evidence demonstrates that the patent is invalid.

### III. Analysis

■ Earth Tool contends that Railhead's '283 patent is invalid because it was on sale more than a year prior to the date the application for patent was filed. A person is not entitled to a patent if "the invention was ... on sale in this country more than one year prior to the date of the application for patent in the United States." 35 U.S.C.A. § 102(b) (West 1984). Thus, the "critical date" in analyzing the on-sale bar found in § 102(b) is one year prior to the date the patent application was filed.

Railhead's patent application was filed on November 12, 1997. On February 5, however, Railhead had filed a provisional patent application under 35 U.S.C. § 111(b). A provisional application must include a specification and drawing, but, unlike a patent application, does not need to include a claim. 35 U.S.C.A. § 111(b)(1) & (2) (West Supp.2001). Railhead contends that its '283 patent is entitled to the priority of the provisional application. As a result, according to Railhead, the February 5, 1997 date of filing the provisional application should be used in calculating the critical date for § 102(b)'s on-sale bar, rather than the November 12, 1997 date the patent application was filed.

■ The patent statutes allow for such priority, but only if the provisional application discloses the invention "in the manner provided by the first paragraph of section 112 of this title." 35 U.S.C.A. § 119(e)(1) (West Supp.2001). That paragraph requires as follows:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same....

35 U.S.C.A. § 112 (West 1984). "To fulfill the written description requirement, the patent specification 'must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" *Gentry Gallery, Inc. v. Berkline, Corp.*, 134 F.3d 1473, 1479 (Fed. Cir.1998) (alteration in original) (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir.1989)). In other words, the application must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession *of the invention.*" *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir.1991); *see also Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1575 (Fed.Cir.1985) ("[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'") (quoting *In re Kaslow*, 707 F.2d 1366, 1375 (Fed.Cir.1983)). "The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed.*" *Vas–Cath*, 935 F.2d at 1564.

Thus, for Railhead to be entitled to the filing date of the provisional application, that application must have included a written description that disclosed to one skilled in the art that, on the date the provisional application was filed, Cox was in possession of the invention ultimately claimed in the '283 patent. Earth Tool contends that Railhead's provisional application did not fulfill this requirement and that, as a re-

sult, Railhead is not entitled to rely on that application's filing date.

The '283 patent claims "[a]n asymmetric drill bit for horizontal directional drilling in rock, comprising: a bit body attached to an end of a sonde housing [that is] angled with respect to the sonde housing." (Def.'s App. at 339.) Railhead's proposed claim construction statement contends that the '283 patent's claim language, "angled with respect to the sonde housing," refers to the offset placement of the "toe" and the "heel" of the drill bit in relation to the sonde housing. (Def.'s Supp.App. at 68.) Cox, the inventor of the bit, testified that the "toe" means "the teeth" of the bit, which protrudes below the front of the sonde housing, whereas the "heel" is "the base part, the far protrusion" on the other side of the sonde housing. (Def.'s App. at 399.) Cox further testified that he "invented the methodology of the bit's toe-to-heel ratio," (Def.'s App. at 404), and that the "the toe-to-heel ratio is what makes [the bit] accomplish its random drill," (Def.'s App. at 393). According to Cox, the "toe-to-heel ratio" means "the amount above and the amount below" the "outer circumference of the sonde housing." (Def.'s App. at 374; Pl.'s App. at 5, ¶ 6.)

In light of the '283 patent's claim, the provisional application must disclose to one skilled in the art that the drill bit Cox invented was "angled with respect to the sonde housing," or, in other words, had a toe and heel that were offset from the outer circumference of the sonde housing. After careful review of the provisional application and the evidence submitted by the parties, the Court concludes that no genuine issue of material fact exists regarding this issue, and that Earth Tool has demonstrated by clear and convincing evidence that the provisional application does not satisfy this requirement.

Initially, Earth Tool points to the summary language of the provisional applica-tion's specification and notes that it contains none of the same language as the '283 patent's claim. The summary language of the provisional application is as follows:

A directional earth boring tool for boring all earth formations such as dirt, sand, rock and/or any type combination of formations, utilizing a bit body containing fixed and semi-floating cutting points and one or more fluid channels for the purpose of lubricating and dispersing cut and/or fractured formations. [A] high impact point-fracturing method of removal of dense or rock formations and also creates a high-velocity orbital node while drilling softer or less dense formations. The beveled cavity within the bit design allows the bit to be steerable in all formations. The bit body is attached to the boring drill body, which contains at least one or more fluid channels, by means of an interference connection that withstands transverse loading. The asymmetrical method of attachment incorporates resultant reactions from the drill stem and drill body derived from input torque and thrust supplied by drilling machine, to create a random elliptical pattern while boring which also creates a hole larger than the concentric design of the drill body would typically allow.

(Def.'s App. at 346.) Nothing in this language states that the drill bit is "angled with respect to the sonde housing" or otherwise describes the toe, the heel, or the toe-to-heel ratio. Though the language refers to an "asymmetrical method of attachment," that simply does not necessarily imply that the toe and heel of the bit are attached with a certain amount of the heel protruding above the sonde housing and a certain amount of the toe protruding out below the sonde housing.

Railhead attached two drawings to its provisional applications and focuses on

these drawings to support its contention that the provisional application adequately discloses the invention. *See* Pl.'s Response at 23–24; Pl.'s App. at 5–6. As Earth Tool points out, however, it is impossible to tell from the angle of these drawings that the heel and toe of the drill bit are offset from the circumference of the sonde housing. In support of its contention, Earth Tool presented the declaration of Randy R. Runquist. Runquist, who is experienced in the area of trenchless drilling and bit design for such drilling, states as follows:

> The two drawings included in the provisional application are drawn at such an angle that one of skill in the art cannot tell how the device would look from the side view. To the extent the Incredibit has a "toe" and a "heel" which stick out beyond the outer diameter of the sonde housing when the bit is mounted on the sonde housing, one of ordinary skill in the art cannot tell whether or how much the "heel" and "toe" stick out. The angle of perspective on the drawings shows only a variation of a top view which prevents comparison of the toe or the heel to the diameter of the sonde housing.

(Def.'s App. at 476.)

Indeed, Cox admitted as much in his deposition. Regarding the two drawings attached to the provisional application, Cox testified as follows:

Q: This figure [figure 1 of the provisional application] does not reflect the heel or toe angle, does it?

A: Well, me knowing it, I know it's there, I can see because of the thinness at the top right prior to the door. It's on the back side of it. I do not see the head or the top part of the bit at this moment. Knowing how it seats, I—You know, I don't know what you're driving at.

Q: You know from understanding the configuration of the Incredibit that it has a heel and a toe?

A: Correct.

Q: But this drawing, Figure 1, does not show that heel and toe, does it?

A: Correct. That's not the only drawing provided.

Q: Let's go to the next drawing, Drawing 2. Drawing 2 is a different view of the bit, sonde and parts of the starter rod, is that correct?

A: The points, the bits, yes.

. . . .

Q: Can you see in Figure 2 the heel?

A: I see it, yes.

Q: Okay. Can you see the toe on that drawing?

A: Knowing it's on the back side, yes.

Q: But that comes from your familiarity with the Incredibit itself as opposed to being able to see the actual toe on this drawing; am I correct?

A: I don't face you, you won't see my face. It's not facing that side of it.

Q: That's right, it's not facing from the right direction to see the toe; right?

A: Correct.

(Def.'s Supp.App. at 6–8.) [1]

The only evidence Railhead submits to counter the evidence highlighted

---

[1] And, the testimony of Joseph Wade Steele, which was submitted in support of defendant Vermeer's Motion for Summary Judgment, supports Runquist's and Cox's deposition testimony on this issue. Steele is currently responsible for Railhead's research and development and, aside from David Cox, is the Railhead employee most familiar with Railhead's drill bit. (Def. Vermeer's Supp.App. at 53–55, 59–61.) Steele testified about the provisional application for Railhead's '743 patent, which claims the method of drilling performed when using the Railhead drill bit claimed in the '283 patent. The provisional application for the '743 patent contains the

by Earth Tool is the declaration of Cox. As Earth Tool points out in its Motion to Strike Cox's declaration, however, Cox's declaration is contrary to his deposition on this point. In his declaration, Cox states as follows:

> To my eye the drawings which were submitted with the provisional application clearly show a heel portion and a toe portion, each of the portions extending respectively above and below the outer circumference of the sonde housing. Although the drawings show the two pieces in exploded configuration, I believe that because they are accurate scaled drawings of the actual tool, one of ordinary skill could actually construct the tool itself from these drawings and if that were done, the heel and toe portion would be present.

(Pl.'s App. at 5.) Cox's declaration contradicts his deposition testimony, wherein he admitted that the toe and heel and, by implication, the ratio between the two, are not apparent from the drawings attached to the provisional application. A party cannot defeat a motion for summary judgment by filing a declaration that impeaches, without explanation, his earlier sworn testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). This is exactly what Railhead has attempted to do. Railhead's response to Earth Tool's Motion to Strike attempts to explain away Cox's impeaching declaration, contending that Cox was confused by the questioning and that, in any event, Cox was focusing solely on the drawings in answering the questions during his deposition and not on the totality of the disclosure in the provisional application, which is allegedly what he focused on in his declaration. The Court has thoroughly reviewed this portion of Cox's deposition testimony, however, and disagrees with Railhead's contention that the questioning was confusing; indeed, the questioning appears to the Court to have been clear and succinct. Furthermore, the Court has already reviewed the summary language in the provisional application and found that nothing therein revealed the importance of the toe and heel's placement in relation to the sonde housing. Thus, Railhead's suggestion that Cox is merely clarifying his testimony based upon the entirety of the provisional application's disclosure is sophistry. In short, Cox's declaration regarding the disclosure of the toe-to-heel ratio in the provisional application's drawings is inconsistent with his prior deposition testimony and is thus insufficient to create a material issue of fact.[2]

■ Consequently, Railhead has failed to create a genuine issue of material fact regarding this issue. Furthermore, the Court concludes that Earth Tool has pre-

---

same drawings as the provisional application for the '283 patent. Regarding those drawings, Steele testified as follows:

> Q: Okay. I'm going to show you what's part of Exhibit 101 [Figure 1 of the '743 patent's provisional application]. Can you tell me rom this drawing if the teeth extend below the sonde housing?
> A: No, sir.
> Q: Can you tell me if the back portion of the bit extends above the sonde housing?
> A: No, sir.
> Q: Let's turn to page—to ET02951 [Figure 2 of the '743 patent's provisional appli-

cation]. Same question, can you tell me from that drawing if the teeth extend below the sonde housing?
> A: No, I can't.
> Q: Can you tell me if the heel portion of the bit extends above the sonde housing?
> A: No.

(Def. Vermeer's Supp.App. at 63.)

2. As indicated in a separate order issued this same day ruling on Earth Tool's Motion to Strike, however, the Court is not inclined to strike Cox's declaration.

sented clear and convincing evidence, in the form of Runquist's, Cox's, and Steel's deposition testimony and a comparison of the language and drawings of the provisional application and the claims of the '283 patent, that Railhead is not entitled to rely on the provisional application's filing date. Because uncontroverted evidence establishes that the bit was on sale prior to November 12, 1996, the Court concludes that Earth Tool has demonstrated that Railhead's '283 patent is invalid.

*IV. Conclusion*

For the foregoing reasons, Earth Tool's Motion for Partial Summary Judgment [document number 55–1] is hereby GRANTED. Earth Tool has demonstrated by clear and convincing evidence that Railhead's '283 patent is invalid because it was on-sale prior to November 12, 1996, the applicable critical date for purposes of the on-sale bar contained in section 102(b) of Title 35.